THE UNION PACIFIC RAILROAD COMPANY V. W. O. BEARDWELL.

No. 15,580. (99 Pac. 214.)

SYLLABUS BY THE COURT.

1. RAILROADS—*Delay in Transportation—Action for Damages— Petition.* In an action for damages resulting from delay in the transportation of goods by a common carrier, where the petition in general terms alleges a shipment and contains nothing to suggest a special contract, it is not error to deny

Railroad Co. v. Beardwell.

a motion to require the plaintiff to amend by stating whether he shipped under an oral or a written contract.

2. ——— *Contract Limiting Common-law Liability.* Assuming it to be the law that where a railroad company has once accepted goods subject to the ordinary liabilities of a common carrier such liabilities can not be lessened by an agreement subsequently assented to by the shipper, the rule can have no application where the parties at all times contemplated the making of a written contract defining their obligations with respect to the shipment.

Error from Graham district court; CHARLES W. SMITH, judge. Opinion filed December 12, 1908. Reversed.

*N. H. Loomis, R. W. Blair, H. A. Scandrett,* and *B. W. Scandrett,* for plaintiff in error.

*C. L. Kagey,* and *R. M. Anderson,* for defendant in error.

The opinion of the court was delivered by

MASON, J.: W. O. Beardwell recovered a judgment against the Union Pacific Railroad Company for damages resulting from delay in carrying live stock shipped by him, and the defendant prosecutes error.

The petition alleges the fact of the shipment, saying nothing of any special contract. The defendant moved that the plaintiff be required to make it more definite and certain by specifying whether the shipment was made under an oral or a written contract, and, if the latter, by setting out a copy thereof. The denial of this motion is complained of. The ruling made can not be regarded as erroneous, for the reason that the petition by a fair interpretation must be regarded as describing a shipment under the law and not one under a special contract, whether oral or written. It alleges that the defendant was a common carrier, that the stock was delivered to it as such carrier, to be conveyed to its destination within a reasonable time and delivered to the consignee in a safe, sound and good condition,

for a certain reward. While this language has some tendency to suggest a contract, it plainly refers to the theoretical contract—what is sometimes called the implied contract—which results from the mere delivery of goods to, and their acceptance by, a common carrier. Whether the obligations which the law imposes in that situation should be spoken of as contractual matters little. What the pleader does here is to attempt to define these obligations rather than to assert the making of an agreement between the shipper and the railroad company. If the motion had been sustained all the plaintiff could have done would have been to make this fact more obvious.

Upon the denying of the motion the defendant filed an answer consisting only of a general denial. At the trial it developed that the company claimed that the shipment had been made under a written contract and that no recovery could be had because the plaintiff had failed to comply with its terms. The court submitted to the jury the question whether the goods were shipped under the law or under a special contract. It is at least doubtful whether in this state of the pleadings evidence concerning the written contract was admissible. (*Mo. Pac. Rly. Co. v. Grocery Co.*, 55 Kan. 525, 40 Pac. 899; *Southern Pac. Co. v. Arnett*, 111 Fed. 849, 50 C. C. A. 17.) At all events the plaintiff was not required to set it up in his petition, for he did not rely upon it, and as his adversary did not mention it in the answer he had no opportunity to plead matter in its avoidance. The case was tried, however, and must be here treated, as though the issues in that regard had been fully made up.

The defendant maintains that a demurrer to the evidence should have been sustained upon the ground that it was conclusively shown that the shipment was made under a written contract which required any claim for damage to be made within ten days from the unloading of the stock and before it should be mingled with other

stock, and that this condition was not complied with. No notice of loss or injury was given within the time stated, and because of this and perhaps other omissions it is practically conceded, and the trial court instructed, that no recovery was possible if the rights of the parties were defined by the written agreement referred to. The plaintiff admitted signing the contract. The precise theory upon which he denies being bound by it can not, for the reason already stated, be found in the pleadings, and must be sought in the proceedings during the trial, the instructions of the court, and the argument made in the brief. From these sources it distinctly appears that the only contention relied upon to avoid the effect of the written instrument was that before its execution the stock had been delivered to, and accepted by, the company, which thereupon became charged under the law with the duties of a common carrier to a shipper, and that these duties could not be affected by the subsequent making of the written contract. No claim was made that the provision concerning the time of making a demand limited the company's common-law liability within the meaning of the statute which permits such limitation only when authorized by the board of railroad commissioners (Gen. Stat. 1901, § 5987); or that the defendant had not brought itself within the terms of an order on the subject made by the board; or that the signature of the plaintiff was procured by any fraud or unfair dealing. Therefore no question with regard to these matters need be considered. The controversy is narrowed to two questions: (1) Does the acceptance of a shipment in the character of a common carrier prevent an alteration of the resulting relations, by a special contract subsequently entered into? (2) If so, did the evidence tend to show facts to which that principle could apply? In volume 5 of the American and English Encyclopædia of Law, at page 301, it is said:

"The special contract limiting the carrier's liability must have been made at the time of the shipment of the

goods; if not made then or earlier, it will be conclusively presumed that the shipment was made subject to the common-law rules as to the carrier's liability, and this liability can not be lessened by a subsequent agreement. A stipulation contained in a bill of lading, which attempts to limit the carrier's liability, is void where the bill is not delivered until after the shipment of the goods or their loss."

In most or all of the cases cited in support of this text there was a considerable interval between the shipment of the goods and the alleged making of the special contract, and the question presented was not whether it was competent for the parties to make a valid agreement affecting the obligations of the carrier but whether in fact under the circumstances of each case the shipper should be deemed to have assented to such a change. Most of them involve merely the effect of the shipper's accepting without protest, after he has parted with the possession of his goods, a bill of lading which professes to limit the carrier's liability. (See, in this connection, 6 Cyc. 416, text to notes 77 and 78; 1 Hutch. Car., 3d ed., § 416.) Here the signing of the contract and the shipping of the stock were practically simultaneous. The fact that the stock was loaded into the cars before the shipper attached his signature to the contract can not be especially important; certainly it is not controlling. But assuming that the text quoted is to be given full force in its widest scope, and that except for the consideration to be noted the evidence would have enabled the jury to say that the company had accepted the stock for shipment under the strict liabilities of a common carrier before the contract was signed, the plaintiff's own testimony showed affirmatively that the principle stated could not apply. In answer to the question whether he knew he was going to sign the contract when he loaded the stock he said he expected to sign some contract. Whatever the rule might be under other circumstances, the fact that during all the steps in the transaction the making of a

Railroad Co. v. Beardwell.

written contract defining the rights of the parties was in contemplation prevented the establishment of any relation between them that they could not afterward alter by mutual consent. The dealings of the parties prior to the signing of the agreement constituted mere preliminary negotiations culminating in the formal contract, which if otherwise valid became the sole evidence of the obligations of each. The contract, not being vulnerable to the only attack made upon it, must be regarded as binding. The plaintiff's failure to comply with the provision in regard to notice precluded his recovery, and on this account the demurrer to his evidence should have been sustained.

This view disposes of the present proceeding, but of two other contentions it may be said: In defining the liability of a common carrier the court said "it must deliver the goods received at the place of destination in good condition, and in a reasonable time." This is complained of as assuming that the goods were received in good condition. The complaint is unfounded, for the statement quoted was qualified by these words, which immediately followed: "If it fails to do this it is liable for the value of the goods not delivered or the damage to such as is delivered in bad condition, *if such failure was caused by its negligence.*"

A motion was made to strike out the testimony of a witness as to market prices, on the ground that his cross-examination showed his only information on the subject was derived from such sources as to make it incompetent. We can not pass upon the question argued, for the reason that while the abstract shows the cross-examination in full it does not include any statement of even the substance of the examination in chief. Therefore we are not advised what the testimony was or what objections, if any, were made to its admission.

The judgment is reversed, and a new trial ordered.