S. METZ et al., Partners, etc., *Appellees,* v. THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, *Appellant.*

No. 18,148.

SYLLABUS BY THE COURT.

1. INTERSTATE SHIPPING CONTRACT—*Governed by United States Statutes and Federal Decisions.* The shipment from Burr Oak, Ill., to Abilene, Kan., was an interstate shipment and was governed by the statutes of the United States and the federal decisions interpreting those statutes.

2. —— *A Maximum Valuation of Property Shipped May be*

Metz v. Railway Co.

*Agreed Upon.* The law applicable to this case is determined by the supreme court of the United States in the Croninger case, cited in the opinion, as follows: "A common carrier can not exempt himself from liability for his own negligence or that of his employees, but the rigor of this rule may be modified by a fair, reasonable and just agreement with the shipper which does not include exemption from such negligence; and the right to receive compensation commensurate with the risk involves the right to agree upon rates proportionate with the value of the property transported."

Appeal from Dickinson district court; ROSWELL L. KING, judge. Opinion filed October 11, 1913. Reversed.

*Paul E. Walker,* and *Luther Burns,* both of Topeka, for the appellant.

*C. S. Crawford,* of Abilene, for the appellees.

The opinion of the court was delivered by

SMITH, J.: This is an action to recover damages for injuries received by a stallion in an interstate shipment on appellant's railroad from Burr Oak, Ill., to Abilene, Kan. No member of the appellee firm was present at the place of shipment, but the horse, with three others, was in the charge of one Sackett, who signed the contract of shipment as agent of appellee and acted as caretaker of the horses from Burr Oak to Abilene. That the horse was injured by the negligent operation of the train by appellant's employees is not controverted, neither is the fact that appellant had two rates of shipment made, published, and, at the time of shipment, posted for the information of shippers at Burr Oak; nor that by such schedule the rate where such a shipment is made without a special contract as to the value of animals shipped, or of the amount to be recovered in case of loss or injury, is higher than when so limited. It is correctly contended that the contract in this case does not recite the higher rate, known as the rate at "carrier's risk," nor the lower rate at which the

shipment was made, which is called the rate at "shipper's risk," but it does recite that the shipment was to be made at a rate less than shipments transported at carrier's risk.

It is contended that this provision is in violation of the Carmack amendment (Part 1, 34 U. S. Stat. at Large, ch. 3591, § 7, p. 593) to the interstate commerce law, which prohibits the carrier from contracting for immunity from damages resulting from its own negligence, and further that the contract in this respect is void for want of consideration. Both arguments have been fully answered in *Adams Express Co. v. Croninger*, 226 U. S. 491; *C., B. & Q. Ry. v. Miller*, 226 U. S. 513; *Chicago, St. P. &c. Ry. v. Latta*, 226 U. S. 519, and in *Nursery Co. v. Nursery Co.*, 89 Kan. 522, 132 Pac. 149, and therein decided adversely to these contentions.

A horse of the fair value of $2000 may be shipped without special contract at the regular tariff rate, and if injured or ruined in transportation by the negligence of the carrier, the shipper may recover his actual loss. The same horse may be shipped at a rate much less under a contract and agreement that in case of injury or destruction of the horse the carrier shall be liable for the agreed value of one hundred dollars. To the shipper the difference in rate is the consideration of the contract; to the carrier the difference is in the risk assumed. The shipper has the choice of the two plans. The contract and valuation plan, in the cases cited, is held not to be a contract against the carrier's negligence, but for a basis of determining the amount of damages in the event of loss through its negligence. There is evidently a valid reason for the distinction. The element of risk is somewhat similar to insurance. A man has a house worth $20,000; he may insure it against loss by fire in the sum of $15,000, $10,000, $5000 or $1000. The premium to be paid is commensurate with the risk assumed.

The sixth instruction given is directly opposed to the decisions cited, *supra,* and is erroneous, as are also the general verdict and the judgment.

In the brief of appellee stress is laid upon the fact that the abstract filed by appellant recites only that a motion for a new trial was filed and overruled without reciting the grounds of the motion. We are asked to assume that no grounds for a new trial were stated in the motion. The motion was not abstracted; but the remedy is not the one asked, but the appellee by counter abstract may supply the omission and make his claim for the costs thereof.

We have not considered it necessary to discuss all the assigned errors, but have determined the case upon the governing principle which practically dominates the other assignments.

The judgment is reversed and the case is remanded for a new trial.