No. 18,878.

A. CHRISTL, *Appellee*, v. THE MISSOURI PACIFIC RAILWAY COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

1. INTERSTATE FREIGHT RATES—*Binding on Shipper and Carrier When Filed and Published.* The filing and publication of interstate rates based on a reasonable agreement as to the valuation of property shipped and which is proportioned to the extent of the risk assumed by the carrier is consonant with public policy and binding upon the parties.

2. SAME—*Shipper Presumed to Have Notice of Published Rates.* Two carriers filed and published tariffs under the interstate commerce law making two rates on household goods, one of which was based on a declared valuation and limitation of liability in case of loss, and the other showed a higher rate where no valuation was declared or limitation prescribed. A shipper of household goods testified that upon inquiry the agent of one of the carriers quoted a rate to him without explaining that two rates were in existence; also, that when the contract of shipment was signed and the freight paid the agent indorsed on it the valuation of the property and the limited liability in case of loss, and that he objected to the limitation, but did not offer to pay the higher rate, nor ask to have the goods withheld from transportation. *Held,* that the filing and publication of the rates afforded the shipper notice of the existence of the two rates, and he is presumed to have known of the limitation in value and of liability in the rate under which the shipment was made and the freight paid, and this rate determines the liability of the carrier in an action brought for the loss of the goods.

Christl v. Railway Co.

Appeal from Reno district court; FRANK F. PRIGG, judge. Opinion filed June 6, 1914. Reversed.

*C. E. Benton, W. P. Dillard,* both of Fort Scott, *H. S. Lewis,* of Hutchinson, *W. P. Waggener,* and *J. M. Challis,* both of Atchison, for the appellant.

*A. C. Malloy,* and *Warren H. White,* both of Hutchinson, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This is an appeal from a judgment awarded to A. Christl against The Missouri Pacific Railway Company for the loss of household goods which were burned while they were in possession of the railway company and in course of transportation. The goods were billed from LeMars, Iowa, to Hutchinson, Kan., over the Chicago, St. Paul, Minneapolis & Omaha railway to Omaha, and thence to destination over the Missouri Pacific railway, under a contract of shipment signed by both parties at a rate based upon a classification and tariff schedules filed by the two carriers with the Interstate Commerce Commission. The rate on household goods, where the value was limited to $10 per hundredweight, was $1.19½, and where the value was not so limited or not stated by the shipper the rate was 50 per cent higher, or $1.79¼ per hundredweight. In the contract of shipment it was stipulated that the value of the goods was $10 for each hundred pounds, and that by reason thereof the shipper was given the lower rate. The appellant offered to pay the loss in accordance with the terms of the contract, but the appellee insisted on the payment of the full value of the property destroyed, claiming that the contract was not binding on him because no explanation was made to him as to the two rates and that no alternative rate was given to him. He testified that a few days before the goods were shipped he made inquiry about the rate on that class of property, and was told

that it was $1.19½ per hundredweight, no mention being made of another rate. The railroad agent testified that the difference in the rates and the basis of them was explained to appellee, and that he chose the lower rate. Appellee admits that when the goods were delivered and the contract of shipment signed there was stamped on the contract the statement of the rate that was based on the limited valuation, and he says that he objected at that time to the limitation, but that he did not offer to pay the higher rate applicable where no valuation was fixed.

This being an interstate shipment, and the tariffs applicable to the class of goods shipped having been filed and published in accordance with the interstate commerce law, the shipper, as well as the carriers, is bound by the tariff under which the shipment was made. The making and posting of a rate based on a reasonable agreement as to the valuation of the property, and which is proportioned to the extent of the risk assumed by the carrier, is consonant with public policy and binding on the parties. (*Nursery Co. v. Nursery Co.,* 89 Kan. 522, 132 Pac. 149; *Metz v. Railway Co.,* 90 Kan. 460, 135 Pac. 667; *Watt v. Railway Co.,* 90 Kan. 466, 135 Pac. 600; *Texas & Pacific Railway v. Mugg,* 202 U. S. 242, 26 Sup. Ct. Rep. 628, 50 L. Ed. 1011; *Texas & Pac. Ry. v. Abilene Cotton Oil Co.,* 204 U. S. 426, 27 Sup. Ct. Rep. 350, 51 L. Ed. 553, 9 A. & E. Ann. Cas. 1075; *Chicago & Alton R. R. Co. v. Kirby,* 225 U. S. 155, 32 Sup. Ct. Rep. 648, 56 L. Ed. 1033; *Adams Express Co. v. Croninger,* 226 U. S. 491, 33 Sup. Ct. Rep. 148, 57 L. Ed. 314; *Kansas Southern Ry. v. Carl,* 227 U. S. 639, 33 Sup. Ct. Rep. 391, 57 L. Ed. 683; *Mo., Kans. & Tex. Ry. v. Harriman,* 227 U. S. 657, 33 Sup. Ct. Rep. 397, 57 L. Ed. 690.)

Appellee insists, however, that the contract into which he was led to enter was not fair and open; that he was not informed that there were two rates, and was not given a choice of the higher rate based upon an

undeclared valuation.   Although there is a conflict in regard to whether he was informed concerning the rates, the verdict must be deemed to have settled that conflict in his favor, but, as has been seen, he does admit that the limited valuation was brought to his attention when the contract was signed, and although then informed in respect to it, he did not offer to pay the higher rate nor undertake to recall the shipment of his goods. But, assuming that he had no actual knowledge of the existence of the two rates, he was bound to know the contents of the published tariffs, and can not escape the binding force of the tariff under which the shipment was made.   When the tariffs provided for in the federal law are filed and published, notice is given to all shippers and interested parties, and any deviation from the rates, whether done wittingly or unwittingly, would be unlawful and would constitute a discrimination and a preference such as is prohibited by the federal law.

In *Chicago & Alton R. R. Co. v. Kirby,* supra, the shipper contended that he had been guaranteed a quick transportation and delivery of live stock, and because it was not carried out damages were asked.   It appeared that what had been promised to him was a special advantage not provided for in the regular published tariffs nor open to all shippers.   The shipper relied on the fact that he did not see and did not know that the published rates and schedules made no provision for the service he contracted for, and the court answered by saying that:

"For the purposes of the present question he is presumed to have known.   The rates were published and accessible, and, however difficult to understand, he must be taken to have contracted for an advantage not open to others."   (p. 166.)

In *Kansas Southern Ry. v. Carl,* supra, the shipper had signed a contract fixing a rate on the limited valuation of the property to be shipped, but he testified that

he had not read the contract nor been given any information as to its contents, and, further, that he had no knowledge of the existence of two rates. He also testified that if he had known of the difference between the two rates and the effect of accepting the lower he would have paid the higher rate. The court held that the published tariff under which the shipment was made was binding on the parties; that evidence *aliunde* the contract was not admissible to enable the shipper to recover a greater amount of damages than was fixed by the tariff, and that to do so would encourage undervaluation and bring about the preferences which the law was designed to prevent. In respect to the matter of notice the court said:

"The valuation the shipper declares determines the legal rate where there are two rates based upon valuation. He must take notice of the rate applicable, and actual want of knowledge is no excuse. The rate, when made out and filed, is notice, and its effect is not lost, although it is not actually posted in the station: . . . When there are two published rates, based upon difference in value, the legal rate automatically attaches itself to the declared or agreed value. Neither the intentional nor accidental misstatement of the applicable published rate will bind the carrier or shipper. The lawful rate is that which the carrier must exact and that which the shipper must pay. The shipper's knowledge of the lawful rate is conclusively presumed, and the carrier may not be required to surrender the goods carried upon the payment of the rate paid, if that was less than the lawful rate, until the full legal rate has been paid. . . . Nor is the carrier liable for damages resulting from a mistake in quoting a rate less than the full published rate." (pp. 652, 653.)

Touching upon the shipper's knowledge of the rate the court further remarked:

"The defendant in error must be presumed to have known that he was obtaining a rate based upon a valuation of five dollars per hundredweight, as provided by the published tariff. This valuation was conclusive, and no evidence tending to show an undervaluation was admissible." (p. 656.)

Christl v. Railway Co.

In *Mo., Kans. & Tex. Ry. v. Harriman,* supra, the court again referred to the effect, of the filing of a tariff and the notice which the act carries to shippers, saying:

"When the carrier graduates its rates by value and has filed its tariffs showing two rates applicable to a particular commodity or class of articles, based upon a difference in valuation, the shipper must take notice, for the valuation automatically determines which of the rates is the lawful rate. If he knowingly declares an undervaluation for the purpose of obtaining the lower of two published rates, he thereby obtains an advantage and causes a discrimination forbidden and made unlawful by the first section of the Elkins Act of February 19, 1903 (32 Stat. 847, c. 708)." (p. 671.)

Appellee must therefore be deemed to have had notice of the published rates for household goods between the points named and also of the one applicable for the shipment which he made. The limitation in the valuation as well as of the liability became a part of the rate and appellee can recover no more for his loss than was fixed in that rate. On his own testimony he was not entitled to recover more than the amount tendered by appellant, and, therefore, the demurrer to his evidence should have been sustained.

The judgment of the district court will, therefore, be reversed and the cause remanded with directions to enter judgment in favor of appellee for the tendered sum of $145.