No. 19,358.

THE DONOHOO HORSE & MULE COMPANY, *Appellee*, v.
THE MISSOURI, KANSAS & TEXAS RAILWAY COMPANY,
*Appellant*.

SYLLABUS BY THE COURT.

1. INTERSTATE SHIPMENT—*Agreement—Limiting Liability for
Damages—Limitation May Not be Increased by Subsequent
Agreement*.  In an interstate shipment where the liability of
the carrier is proportioned and limited under a just and
reasonable agreement that in case of loss or injury the shipper
shall recover no more than a certain valuation of the prop-
erty transported which is fixed by an agreement made in
consideration that the shipper shall have the lower of two
rates the limitation enters into and becomes a part of the rate,
and the parties can not by any compromise or agreement
after a loss has occurred change the limitation and arrange
for the payment of a greater amount than the value as fixed
in the shipping contract and which became a factor of the
rate charged.

2. SAME—*Time within Which Action May be Brought—Subject
to Waiver*.  The stipulation in a shipping contract to the
effect that in case of loss or injury to the property trans-
ported an action for recovery must be brought within a stipu-
lated time is subject to waiver and estoppel by the parties.

Appeal from Bourbon district court; CHARLES E.
HULETT, judge.  Opinion filed June 12, 1915.  Modified.

*W. W. Brown, James W. Reid*, both of Parsons, and
*John H. Crider*, of Fort Scott, for the appellant.

*A. M. Keene*, of Fort Scott, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.:  An action for the loss of a horse
was brought by J. M. Piper against The Missouri, Kan-
sas & Texas Railway Company before a justice of the
peace of Bourbon county on July 22, 1911, but by an
amendment The Donohoo Horse and Mule Company
was substituted as plaintiff.  The railway company had
undertaken to carry the horse in question with other

horses from Labette, Kan., to Memphis, Tenn., and it
was arranged that still other horses should be placed
in the car when it reached Fort Scott.   Upon arrival
at Fort Scott it was found that the leg of the horse was
broken.   It was alleged that the injury was due to the
negligence of the defendant, that upon the order of the
agent of the defendant at Fort Scott the horse was
killed, and that the agent agreed with the plaintiff on
a settlement of the loss under which the defendant was
to pay plaintiff the sum of $225 but that payment had
never been made.   Another action upon the same claim
was brought in Labette county but it was not prose-
cuted to judgment.   An appeal was taken from the
judgment rendered by the justice of the peace of Bour-
bon county to the district court of that county, and a
trial was had at the October term, 1913.   Motions by
the defendant for a continuance and for leave to file
an answer were overruled, and of these rulings com-
plaint is made.   While there was some excuse for the
defendant being unready for trial the questions
whether there should be further delay and an oppor-
tunity to file a pleading at that late time were within
the discretion of the trial court, and we can not say
that the discretion was abused nor that the defendant
was prejudiced by the rulings.   On the trial the man-
ager of the plaintiff testified that the horse injured was
worth $172.50, that being the amount which plaintiff
had paid for the horse in Labette county, and the court
permitted an amendment of the bill of particulars mak-
ing the claim $172.50 instead of $225 as originally
claimed.   He further testified that upon the discovery
that the horse's leg was broken at Fort Scott the agent
of the defendant called a veterinary surgeon, who de-
cided that the break could not be mended, and thereupon
the agent ordered the horse to be killed and told the
witness that he would have to put in a claim for the
loss, but the witness then informed the agent that the
company could keep the three horses that were in the

car with the injured one and that he would not accept the three horses until the defendant had settled with him, that the agent then communicated with the officers of the company at St. Louis and subsequently reported that defendant would pay the $172.50 for the horse, but that it would be necessary for him to present a claim so that it might pass through the regular channel, and that a voucher would be issued in his favor and paid within from ten to thirty days from that time. The witness added that a settlement of the claim was then made and a definite agreement that the plaintiff should be paid the stipulated value of the horse.

The contract under which the shipment was made recited that the company had two rates on live stock, and that the horses of plaintiff were shipped under a rate that was less than a certain published rate, in consideration of which it was agreed that in case of loss or injury during transportation the liability of the carrier should not exceed $100 for each horse. It appearing from the contract, which was signed by the parties and introduced in evidence, that there were two rates and that the limitations on liability were based on the consideration that the lower rate was given to the plaintiff, further proof on that point was not required. The shipment being from Kansas to Tennessee it was interstate in character, and therefore governed by the federal law. Under that law the agreed value of the horse and the liability in case of its loss was a factor in fixing the rate of transportation, and being transported upon a rate based upon a stipulated value, which was less than the real value, the company can not, by a subsequent agreement or arrangement with the shipper, pay the latter a greater amount than that which was stipulated and became the basis of the rate. To do so would be giving him an advantage over other shippers and would constitute an unlawful discrimination. (*Nursery Co. v. Nursery Co.*, 89 Kan. 522, 132 Pac. 149; *Metz v. Railway Co.*, 90 Kan. 460,

135 Pac. 667; *Kirby v. Railroad Co.*, 94 Kan. 485, 146 Pac. 1183; *Adams Express Co. v. Croninger*, 226 U. S. 491, 33 Sup. Ct. Rep. 148, 57 L. Ed. 314, 44 L. R. A., n. s., 257; *Mo., Kan. & Tex. Rly. v. Harriman*, 227 U. S. 657, 33 Sup. Ct. Rep. 397, 57 L. Ed. 690; *Great Northern Rly. v. O'Connor*, 232 U. S. 508, 34 Sup. Ct. Rep. 380, 58 L. Ed. 703; *Boston & Maine Rd. v. Hooker*, 233 U. S. 97, 34 Sup. Ct. Rep. 526, 58 L. Ed. 868; *Atchison &c. Rly. Co. v. Robinson*, 233 U. S. 173, 34 Sup. Ct. Rep. 556, 58 L. Ed. 901.) The plaintiff insists that its action was not brought upon the shipping contract, but was based on the subsequent agreement between the parties by which they adjusted their differences, including the matter of negligence and the resulting loss. It is true that the plaintiff based its action and relied on the compromise agreement, and it is binding upon them as to all matters about which they might lawfully contract. The carrier and shipper, however, are alike bound by the federal law, which requires equality of rates and prohibits discriminations or preferences among shippers. When a rate is based upon a stipulated valuation the payment of a larger amount to one shipper than the agreed valuation would be a plain discrimination in his favor, something which is not permitted by agreements or understandings before the transportation is begun or by compromise or other agreements after it is ended and the liability for loss incurred. If parties could by compromises or subsequent agreements change the valuation of property shipped and upon which the responsibility of the carrier and the rate of transportation are fixed it would practically overthrow the equality in rates for which the law provides and thwart the purposes of the lawmakers. The extent of the defendant's liability is fixed by the shipping contract and can not be varied by any agreement or device to which parties might resort.

It appears that the action was not brought within the time fixed by the contract, but this stipulation, like

Machinery Co. v. Brown.

that providing for prompt notice of loss, does not enter into the rate and is subject to waiver and estoppel by the parties. A party may by agreement waive such a limitation or he may be estopped by his conduct from insisting that the action was not brought within the time originally fixed. Here the agreement of the parties which adjusted the question of negligence and agreed that there was a liability which should be paid at a stated time in effect waived the limitation, and after such an agreement the defendant is hardly in a position to object that the action was not brought in good time.

The recovery of the plaintiff, however, is excessive in amount, and it is entitled to no more than the amount of liability fixed by the shipping contract, which is $100. The judgment must, therefore, be modified, and to that end the cause will be remanded with directions to reduce the amount of recovery and enter judgment in favor of the plaintiff for $100. So modified, the judgment is affirmed.