No. 21,872.

MAX J. KENNEDY and S. J. HESS, *Appellees,* v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellant.*

### SYLLABUS BY THE COURT.

1. INTERSTATE SHIPMENT—*Live Stock—Contract Limiting Carrier's Liability Valid.* Where rates for intrastate shipments are based on the value of the property as set out in the contract, a provision thereof limiting the carrier's liability to that amount is valid, even with respect to loss occasioned by its negligence.

2. SAME—*Presumption that Rates were Properly Filed.* In the absence of evidence to the contrary, it will be presumed that the schedules of rates and regulations in use by a carrier have been properly filed with the utilities commission.

3. SAME—*Injury to Stock—Negligence.* A finding that an injury occasioned by the making of a flying switch, whereby a string of cars is shunted against a loaded car standing on a siding, was the result of gross negligence, does not, in the absence of any evidence of exceptional circumstances, imply that the injury was intentional or wanton, and does not take the case out of the rule announced in paragraph numbered one of this syllabus.

4. SAME—*Construction of Contract.* Where, under the circumstances stated, the shipping contract contains no express provision that the carrier's liability is limited to the value therein stated, the same result follows from recitals that the rate is based on such valuation.

Appeal from Wilson district court; SHELBY C. BROWN, judge. Opinion filed January 11, 1919. Reversed.

*William R. Smith, Owen J. Wood,* and *Alfred A. Scott,* all of Topeka, for the appellant.

*H. P. Farrelly, T. R. Evans,* both of Chanute, and *J. T. Cooper,* of Fredonia, for the appellees.

The opinion of the court was delivered by

MASON, J.: Max J. Kennedy and S. J. Hess, the owners of three race horses, in September, 1917, shipped them, with some other property, by the Atchison, Topeka & Santa Fe Railway Company, from Ottawa to Wichita, the route lying wholly within the state of Kansas. The shipping contract, which was signed by H. G. Farry, who was acting for the owners, and by

9—104 KAN.

the company's agent, recited that the rates on live stock varied according to value, and that to enable the company to apply the lawful rate the shipper declared the horses to be worth $150 each. While the car containing the property referred to was standing on a siding at Emporia a flying switch was made, and a string of cars was shunted against it, causing injuries which rendered the horses practically worthless. The owners brought an action against the company and recovered a judgment for $4,944.94, of which $4,600 represented damages on account of the injury to the horses. The defendant appeals, asking that the judgment be reduced by $4,150, the difference between the value of the horses as found by the court and the valuation placed upon them in the contract.

1. Since the adoption of the Carmack amendment (except during the period between the passage of the Cummins act, March 4, 1915, and its amendment on August 9, 1916), where rates for interstate shipments have been graded according to the valuation of the property, contracts limiting the carrier's liability to the "released" value as set out in the contract have been upheld in all jurisdictions, the federal decisions controlling the action of the state courts. (10 C. J. 136, 137, 173, 174.) And the great weight of authority favors the same rule in intrastate business. (10 C. J. 165.) The plaintiff contends, however, that in Kansas a different practice is required by the provision of the statute forbidding carriers to limit their common-law liability, and by the decisions of this court.

The statutory provision referred to reads:

"No railroad company shall be permitted, except as otherwise provided by regulation or order of the board, to change or limit its common-law liability as a common carrier." (Gen. Stat. 1915, § 8435.)

This was enacted in 1883 as a part of the law creating the first board of railroad commissioners (Gen. Stat. 1889, § 1336). It probably became ineffective upon the repeal of the greater part of that act, although the section in which it occurs was not enumerated in the repealing statute (Laws 1898, ch. 29, § 1), doubtless because other matters, not relating to the commission, were contained therein. It was reënacted in 1901, at the time of the creation of the second board of railroad commissioners, now succeeded by the public utilities commission. Two orders, of similar effect, have been made authoriz-

ing Kansas railroads by contract to limit their common-law liability, one by the original board, on September 1, 1892 (Rep. Bd. of R. R. Comm'rs, Kan., 1892, p. 37), and the other by the second board, on May 1, 1901. The latter reads as follows:

"Where any railroad company doing business in the state of Kansas shall have in force two rates for the shipment of any class of freight within said state, the higher rate to apply to such shipments where no limitation of the strict common-law liability of said railroad company is made and the lower rate to apply where such liability is limited, it shall be lawful for such railroad company, by contract entered into between such company and any shipper, to change or limit its common-law liability in such manner and to such an extent as may be specified by the terms of said contract; provided, that such contract shall not relieve such railroad company from any liability on the account of the negligence of such company." (Rep. Bd. of R. R. Comm'rs, Kan., 1901-'02, p. 138, Kansas Railroad and Public Utilities Law, compiled by H. O. Caster, 1917, p. 106.)

We do not regard the decisions cited by the plaintiff as committing this court to a disapproval of the general rule referred to, as applied to the facts of the present case. In *Kiff v. A. T. & S. F. Rld. Co.*, 32 Kan. 263, 4 Pac. 401, it was held that under a special contract for shipment at "owner's risk" a carrier was freed from liability because it was not shown to have been negligent, the implication being that it would have been liable for the results of negligence. In *A. T. & S. F. Rld. Co. v. Dill*, 48 Kan. 210, 29 Pac. 148, a special contract requiring a notice to be given if damages were to be claimed was held not to be binding because not freely and fairly made. In *Railway Co. v. Sherlock*, 59 Kan. 23, 51 Pac. 899, a stipulation in a shipping contract made August 14, 1892, that no recovery should be had thereon beyond the valuation therein stated, was held invalid because it was an attempt to limit the carrier's common-law liability, and had not been authorized by the railroad board. In *Railroad Co. v. Beardwell*, 79 Kan. 40, 99 Pac. 214, a special contract was upheld against an attack made upon it by the shipper because of its having been executed after the acceptance of the goods by the carrier, nothing being decided as to whether it might have been vulnerable on other grounds. In *Ward v. Railway Co.*, 87 Kan. 824, 126 Pac. 1083, it was said that a carrier cannot by contract absolve itself from damages caused by its negligence, but no question of the limitation of the amount of recovery was involved. In *Easdale v. Railway*

*Co.,* 100 Kan. 305, 164 Pac. 164, it was held that the limitation of time to sue provided in a special contract could not be waived by the carrier, as this would result in discrimination. In these cases it was recognized that a carrier cannot by contract relieve itself of liability for negligence. The recognition of this principle, however, is practically universal. The real question upon which the division of judicial opinion arises with respect to agreements of the general character of that here involved, is whether a contract which protects a carrier against the recovery of a larger amount than the declared or agreed value of the property—the value stated in the contract, upon which the charge for carriage is based—is one relieving it from the consequences of its own negligence, the majority maintaining the negative and the minority the affirmative. (4. R. C. L. 788, 789; 10 C. J. 166, 171, 172.)

The case having the strongest apparent tendency to commit this court to the minority view is *K. C. St. J. & C. B. Rld. Co. v. Simpson,* 30 Kan. 645, 2 Pac. 821. There a shipping contract made in 1881 contained the clause: "Value not to exceed $100." This was held not to limit the shipper's recovery to that amount. In the discussion, the limitation was treated as one upon the carrier's liability for its negligence, but stress was also placed upon the circumstance that the contract was not freely and fairly entered into, and in *Express Co. v. Foley,* 46 Kan. 457, 26 Pac. 665, the decision was distinguished on that ground. In the latter case the question of the effect of a contract limiting recovery to the valuation stated was considered at length, and this court definitely adopted the view which had in the meantime been announced by the federal supreme court in *Hart v. Pennsylvania Railroad Co.,* 112 U. S. 331, that to limit a carrier's liability to the agreed value of the property shipped is not to absolve it from the consequences of its negligence. It is true that in the Foley case no reference was made to the statute forbidding a carrier to limit its common-law liability without the consent of the railroad commission but, inasmuch as the point was not raised, it was not in the case, and the fact that it might have been, does not deprive the opinion of its authority. That statute does not control the present case, because of the order of the railroad commission allowing a limitation by contract of the carrier's common-law liability. In

*Metz v. Railway Co.*, 90 Kan. 460, 135 Pac. 667, an interstate shipment was involved, and the federal rule therefore necessarily controlled, but the opinion also indicated an approval of the principle on which it is based.

Moreover, whatever might otherwise have been the effect of the decision in the Simpson case upon the solution of the problem here presented, its force is lost by the change that has taken place in the control of carriers' rates and contracts. The carrier and the shipper are no longer permitted to enlarge the privileges of the latter by special contract, or to depart from the terms prescribed by the schedules adopted. (*Mollohan v. Railway Co.*, 97 Kan. 51, 154 Pac. 248.) The charges and rules are, in effect, established by law. That is, they are required to be shown in schedules filed with a public body (now the utilities commission), cannot be departed from, and can be changed only by its consent. (Gen. Stat. 1915, §§ 8338, 8339, 8347, 8390, 8401.) In that situation, the old rules as to the circumstances under which the contract must have been entered into in order to be binding no longer obtain. The shipper is charged with knowledge of the established rates, and the rate corresponding to the stated valuation is the legal rate. (*Kansas Southern Ry. v. Carl*, 227 U. S. 639, 652; *Christl v. Railway Co.*, 92 Kan. 580, 141 Pac. 587.)

2. The plaintiff urges that the principles referred to do not apply, because it was not shown that the schedule of rates on which the freight charge was based, produced by the revising clerk of the company at Chanute, and said by him to have been in force at the time of the shipment, on intrastate business between Ottawa and Wichita, had been filed with or approved by the utilities commission or board of railroad commissioners. It purported to be effective May 15, 1909. There is no reason to suppose that it had not been properly filed, and the presumption is that the statute had been complied with. (*Railway Co. v. Wagner*, 102 Kan. 817, 818, 172 Pac. 519.)

3. The plaintiff makes the further contention that, even if it be assumed that a contract limiting the shipper's right of recovery to the agreed value of the property protects the carrier where a loss has occurred by reason of its failure to exercise ordinary care, the rule does not go so far as to give it protection where its want of care amounted to gross negli-

gence, as was here pleaded and found. A few cases give a color of plausibility to this contention. (*Telegraph Co. v. Crall*, 38 Kan. 679, 17 Pac. 309.) But the distinction sometimes made between "gross negligence" and "ordinary negligence" has been largely repudiated by the later decisions. (4 R. C. L. 770, 771). Except where affected by statute, the legal consequences of negligence do not in this state depend upon its degree. (*Railway Co. v. Walters*, 78 Kan. 39, 96 Pac. 346.) The term "gross negligence" has occasionally been used to signify conduct more accurately designated as wantonness, a term indicating a mental attitude differing from negligence in kind, and not merely in degree (*Railway Co. v. Baker*, 79 Kan. 183, 189, 190, 98 Pac. 804), and this use has resulted in some apparent confusion. Here the misconduct of the defendant was not of a character justly to be regarded as willful or wanton, and the use of the adjective "gross" in characterizing it does not give it any effect other than that of negligence.

4. The shipping contract did not contain a provision which in terms limited the liability of the company on account of the horses to the amount stated therein as their value. But it contained these clauses which we consider to have given it the same effect:

"Having regard for the great variation in the value of Live Stock, the rates thereupon vary according to value. Carriers have no means of determining value of Live Stock when offered for shipment, and Live Stock will not be accepted for transportation unless the shipper or his agent declares in writing the valuation at time and place of shipment. . . . And for the purpose of enabling the first party [the company] to apply the lawful rates as provided in its tariffs, the shipper hereby declares said animals to be of the value as follows, to wit: Each Horse . . . . value $150.00."

"If the parties have agreed on a valuation, as, for instance, where the shipper, in compliance with a regulation requiring the value to be stated as a basis for estimating the compensation to be paid, has placed a valuation on the goods, such valuation will control in an action against the carrier for loss." (10 C. J. 399.)

In a number of cases in the note to this text there was an express limitation on the amount of recovery, but in others the contract merely gave the value of the property. *Alair v. Northern Pac. R. Co.*, 53 Minn. 160, is also of the latter char-

acter. In the first case cited in the note (*Coupland v. Housatonic R. R. Co.*, 61 Conn. 531), the precise question is fully discussed, the conclusion reached being that the view stated follows from the reasoning in such cases as *Hart v. Pennsylvania Railroad Co.*, 112 U. S. 331. That reasoning, as adopted in the Foley case (*Express Co. v. Foley*, 46 Kan. 457, 26 Pac. 665), is based on the proposition that one who has obtained a more favorable rate by reason of the valuation placed on his property in the shipping contract is precluded from asserting that it is worth more than the amount named, for the purpose of increasing his recovery in case of a loss. The reasoning of the federal case which is followed in the Foley case applies with practically the same force whether or not there is an express contract as to the amount of recovery. The risk of loss or injury is an obvious element in determining the charge, where it is based on the value stated, and if the shipper is allowed to demand compensation in a larger amount, he recovers something beyond what he has paid for. In the cases herein cited and referred to, the opinions show that the refusal of the courts to allow a recovery on the basis of a larger valuation than that by which the freight charge was fixed, has been justified by the impolicy and inequity of such a transaction, rather than by the formal contracts on the subject. (See *Wells, Fargo & Co. v. Neiman-Marcus Co.*, 227 U. S. 469, 476.)

The judgment is reversed, with directions to deduct therefrom all that was allowed in excess of $450 on account of the injury to the horses.