No. 20,771.

EARL EASDALE, *Appellee,* v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

1. INTERSTATE COMMERCE—*Connecting Railroads—Rebilling.* Continuous transportation of a car containing household goods and horses from West Plains, Mo., to Princeton, Kan., under separate billing, by the St. Louis & San Francisco Railway Company from West Plains to Kansas City, Mo., and by the Atchison, Topeka & Santa Fe Railway Company from Argentine, Kan., to Princeton, held to be interstate, although the shipper intended when the car started to unload the horses at Kansas City and drive them to Princeton.

2. INTERSTATE SHIPPING CONTRACT — *Waiver of Limitations — Illegal.* The Santa Fe was not at liberty to waive in favor of the shipper a provision of its contract with him limting the time within which an action might be commenced to six months.

Appeal from Franklin district court; CHARLES A. SMART, judge. Opinion filed April 7, 1917. Reversed.

*William R. Smith, Owen J. Wood, Alfred A. Scott,* and *Harlow Hurley,* all of Topeka, for the appellant.

*Wilbur S. Jenks,* of Ottawa, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one for damages for injury to live stock occurring in course of transportation from West Plains, Mo., to Princeton, Kan. The plaintiff recovered, and the defendant appeals, the principal question being whether or not the shipment was interstate.

West Plains is a station on the St. Louis & San Francisco Railway. Princeton is a station on the Atchison, Topeka &

Santa Fe Railway. The plaintiff loaded an emigrant car with household goods and horses at West Plains, and billed the car to Kansas City, Mo., over the Frisco. The car was there delivered to the Santa Fe, and was rebilled by the Santa Fe to destination. The Santa Fe billing read from Argentine, Kan., to Princeton. Argentine is separated from Kansas City by the line between the two states, but the Santa Fe yards at Argentine extend into Kansas City. The car was placed on the Santa Fe tracks by the Frisco. The car in fact passed in course of continuous transportation, without unloading, from West Plains to Princeton. The plaintiff testified that the Frisco agent at West Plains would not bill the car to any place in Kansas unless the horses were inspected. In order to avoid inspection the plaintiff billed the shipment to Kansas City, intending to drive the horses from there to Princeton. On the way to Kansas City, or when the car arrived there, he changed his mind, and after inspection the horses went on in the car with the household goods. The horses were injured while on the line of the Santa Fe. The court allowed the jury to determine the character of the shipment, under an instruction that they might find it was not interstate if they found the plaintiff's original intention was to ship the horses by rail to Kansas City and then take them overland to Princeton. The jury found the shipment was not interstate.

The only conflict in the evidence was whether the Frisco, when it placed the car on the Santa Fe tracks, left the car on the Kansas side, or the Santa Fe switch engine which picked up the car crossed the state line to get it. The court does not regard this matter as material, and applying the law to the undisputed facts, concludes that the shipment was interstate.

The plaintiff relies on the case of *Gulf, Colorado & Santa Fe Rly. Co. v. Texas*, 204 U. S. 403. In that case corn was shipped from Hudson, S. Dak., to Texarkana, Tex. While in transit the corn was sold. After arrival at Texarkana and after a delay of five days the purchaser reshipped the corn to Goldthwaite, Tex., to fulfill a contract. It was held that the shipment was intrastate. At the commencement of transportation the corn had no destination but Texarkana. The carrier's contract with the shipper ended there. While the

corn was in transit the shipper parted with title. The purchaser paid for the corn and received it at Texarkana. Not until then did he have any control over its destination. The purchaser might have fulfilled his contract with his customer at Goldthwaite with other corn. He did not start to fulfill this contract until after the carriage initiated by the original shipper had been completed, and the subsequent forwarding of the corn to Goldthwaite was an independent shipment.

The plaintiff also cites the case of *Chi., Mil. & St. P. Rly. v. Iowa,* 233 U. S. 334. A coal company at Davenport, Iowa, received cars of coal from the state of Illinois over various railroads and paid the transportation charges to Davenport. The cars would be placed on an interchange track and the coal company would then bill them to designated points, according to the demands of its trade. The railway company refused to receive coal billed to stations on its own line in Iowa in cars of other companies. The state railroad commission ordered it to accept such billing. It was held that the local billing was intrastate and that the railroad commission had jurisdiction over the subject. The decision was controlled by the following finding of the railroad commission, which the court approved:

"Under the admitted facts, the city of Davenport became a distributing point for coal shipped by the consignor. The certainty in regard to the shipments of coal ended at Davenport. The point where the same was to be shipped beyond Davenport, if at all, was determined after the arrival of the coal at Davenport." (p. 342.)

Neither of the cases cited governs the present controversy. It is well settled that the essential character of commerce, as disclosed by all the facts, and not its incidents, such as local or through bills of lading, determines its character as interstate or otherwise. (*Texas & N. O. R. R. Co. v. Sabine Tram Co.,* 227 U. S. 111; *Louisiana R. R. Comm. v. Tex. & Pac. Ry.,* 229 U. S. 336; *Atchison & Topeka Ry. v. Harold,* 241 U. S. 371.)

In this instance, Kansas City was at no time the destination of the horses, any more than it was the destination of the household goods in the same car. All the articles in the car were destined from the beginning for Princeton. To avoid the burdens of inspection, the plaintiff at first intended to

change the method of transporting the horses on arrival at Kansas City, but with the exception that the horses were to be unloaded there for driving all the property placed in the car started on a continuous journey, not to Kansas City, but to Princeton. On the way to Kansas City, or on arrival there, the plaintiff concluded not to substitute driving for railway transportation of the horses from Kansas City to Princeton, and the car with its original contents proceeded uninterruptedly to its previously determined destination. The necessary rebilling was a mere incident to the shipment as to both the horses and the household goods. In taking the car from the Frisco the Santa Fe was apprised of the fact that it was completing a shipment originating on that road. To hold that the Santa Fe billing was an independent, intrastate matter, would open the way to evasions which would deprive congress of control over interstate commerce.

The bills of lading issued by both railroads required an action to be commenced within six months. This was not done. There was evidence of conduct on the part of Santa Fe employees which under local rules might have amounted to a waiver of the limitation. Since the shipment was interstate, the railway company could not favor the plaintiff by granting him a grace period within which to bring suit. It is said there was no evidence that the form of contract used was the form adopted for interstate shipments. Neither was there any evidence that it was not the form adopted for completing interstate shipments received by the Santa Fe at Argentine and requiring rebilling. Illegal preferences by the railway company will not be presumed, and the shipment being governed by federal law, which condemns discrimination by waivers of contract limitations, the parties were bound by the contract made.

The judgment of the district court is reversed and the cause is remanded with direction to enter judgment for the defendant.