No. 21,085.

E. R. WALLINGFORD et al., Partners, etc., as Wallingford Bros., *Appellees*, v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellant*.

### SYLLABUS BY THE COURT.

1. SHIPPING WHEAT—*Bill of Lading—Provision for Determining Value in Case of Loss Upheld.* A provision in a bill of lading that the amount of any loss or damage for which the carrier is liable shall be computed on the basis of the value of the property (being the *bona fide* invoice price, if any, to the consignee, including the freight charges, if prepaid) at the place and time of shipment is held to be reasonable and valid and intended merely to establish a rule for determining the value of the property in case of loss, and not to limit or diminish the carrier's liability.

2. SAME—*Wrongful Delivery—Measure of Damages.* In this case it is held that such a provision in the bill of lading precludes the recovery by the shipper for the difference between the market value of wheat at the place of delivery and the contract price at which he had sold the same, the measure of damages being the difference between the price which the wheat sold for at the place where it was delivered and the invoice price or fair market value at point and time of shipment.

Appeal from Sedgwick district court, division No. 1; THOMAS C. WILSON, judge. Opinion filed October 6, 1917. Modified and affirmed.

*William R. Smith, Owen J. Wood, Alfred A. Scott,* and *Harlow Hurley,* all of Topeka, for the appellant.

*J. Graham Campbell,* and *Ray Campbell,* both of Wichita, for the appellees.

The opinion of the court was delivered by

PORTER, J.: The action was to recover damages for the failure to deliver four cars of wheat shipped by appellees from Wichita, Kan., to Galveston, Tex. The plaintiffs recovered judgment for the difference between the price at which they had contracted to sell and the price they received for the wheat on the open market after the original purchaser had declined to receive it. The defendant appeals.

It was alleged in the plaintiffs' petition that two of the cars of wheat were sold to the Texas Star Flour Mills Company at

a contract price of $1.04½ per bushel; that the wheat was consigned shippers' order, notify the Texas Star Flour Mills Company at Galveston; and that the bills of lading for these two cars, with drafts attached, were sent to and were paid by the consignee. It is then alleged that the defendant unloaded the cars into an elevator at Texas City, Tex., and that the consignee refused to accept the wheat and drew drafts back on the plaintiffs for the purchase price, which plaintiffs paid. It is alleged that they were obliged to sell the wheat on the open market at Texas City and realized therefor the market price of 92¾ cents per bushel; and as to these two cars judgment was asked for $141.26, with interest thereon at six per cent.

The other two cars of wheat it was alleged were sold to the Walker Grain Company, of Fort Worth, Tex., at a price of $1.01½ per bushel for the first, and $1.04 per bushel for the second car; that under directions of the purchaser the plaintiffs shipped this wheat to Galveston, shippers' order, notify the Texas Star Flour Mills Company, and sent the bills of lading, with drafts attached, to the Walker Grain Company, which paid the drafts. In violation of the shipping directions, it is alleged, defendant unloaded these two cars of wheat into an elevator at Galveston, on account of which the Walker Grain Company refused to accept the wheat under its contract and drew drafts back on plaintiffs for the purchase price, which plaintiffs paid. It was also alleged that plaintiffs sold these cars on the open market at 93½ cents per bushel and damages were asked for the difference between the contract price and the sale price, amounting to $161.32, and interest at six per cent.

The first contention is that the evidence shows that delivery of the two cars of wheat sold to the Walker Grain Company was tendered to the Texas Star Flour Mills Company, which refused to accept them, on the claim that the wheat was not of a fit quality, and ordered the cars unloaded at a public elevator in Galveston, where defendant, in pursuance of such order, delivered them, and that it is not responsible for the refusal of the flour mills company to accept the wheat in the first instance, and had a right to follow directions given by the manager of the company and unload the wheat into the elevator at Galveston.

35—101 Kan.

The case was tried without a jury. The court made findings of fact and conclusions of law, and found that the defendant, without authority from the owners of the wheat or the holder of the bills of lading, stopped and unloaded these two cars in question at a public elevator at Galveston, Tex., and that the reason the Texas Star Flour Mills Company refused to accept the cars was because the wheat had been unloaded and mixed with other wheat in a public elevator and the milling company would accept nothing but unmixed, country run wheat in the cars called for by the bills of lading. The court further found that it became necessary for the plaintiffs to sell the wheat in the open market.

We think we are bound by the findings of fact made by the trial court on the evidence. There seems to have been a dispute between the plaintiffs and the defendant railway company as to the ownership of the wheat at the time the traffic manager of the Texas Star Flour Mills Company directed the wheat to be unloaded at the public elevator. The wheat was not sold to the milling company, but to the Walker Grain Company, and if the latter had in its possession or owned the bills of lading the defendant is in the position of having unloaded the wheat at a public elevator at the request and direction of a party who was not the owner of the wheat nor the holder of the bills of lading.

The second contention urged by the defendant is that the court adopted the wrong measure of damages. This contention is based upon a finding which the court made that the bills of lading under which all the cars of wheat were transported contained the following provision:

"The amount of any loss or damage for which any carrier is liable shall be computed on the basis of the value of the property (being the *bona fide* invoice price, if any, to the consignee, including the freight charges, if prepaid), at the place and time of shipment under this bill of lading, unless a lower value has been represented in writing by the shipper or has been agreed upon or is determined by the classification or tariffs upon which the rate is based, in any of which events such lower value shall be the maximum amount to govern such computation, whether or not such loss or damage occurs from negligence."

The court also found and stated the invoice price or the fair market value at point and time of shipment, the price plaintiffs received for the wheat in the elevator where it was

unloaded, and the difference between these two prices, which amounts to the sum of $83.53 for the four cars. In other words, the invoice price exceeded the sale price by this amount. This amount the defendant insists is the full extent of its liability and of the plaintiffs' loss under the contract of shipment.

The plaintiffs contend, on the other hand, that the stipulation in the contract applies only as the measure of damages where the wheat has been lost, that is destroyed, or in some manner damaged, and that it can not apply here because the wheat was transported without damage or loss except as occasioned by the failure to deliver it at the proper place. In our opinion, this is a strained construction of the plain language of the stipulation. Plaintiffs sue to recover damages for loss in value of the wheat by failure of the carrier to comply with its contract. The stipulation is that "the amount of any loss or damage for which any carrier is liable shall be computed on the basis, etc." Plaintiffs contend, however, that inasmuch as defendant deviated from the terms of its contract of carriage the contract thereby became abandoned and the special exemptions as to the measure of damages thereby terminated. That was the contention in *Georgia, Fla. & Ala. Rly. v. Blish Co.*, 241 U. S. 190, 197, but the court said that—

"The effect of the stipulation could not be escaped by the mere form of the action. The action is in trover, but as the state court said, 'if we look beyond its technical denomination, the scope and effect of the action is nothing more than that of an action for damages against the delivering carrier.' 15 Ga. App., p. 147. It is urged, however, that the carrier in making the misdelivery converted the flour and thus abandoned the contract. But the parties could not waive the terms of the contract under which the shipment was made pursuant to the Federal Act; nor could the carrier by its conduct give the shipper the right to ignore these terms which were applicable to that conduct and hold the carrier to a different responsibility from that fixed by the agreement made under the published tariffs and regulations. A different view would antagonize the plain policy of the Act and open the door to the very abuses at which the Act was aimed. *Chicago & Alton R. R. v. Kirby*, 225 U. S. 155, 166; *Kansas Southern Ry. v. Carl*, 227 U. S. 639, 648; *Atchison &c. Ry. Co. v. Robinson*, 233 U. S. 173, 181; *Southern Ry. v. Prescott*, 240 U. S. 632, 637. We are not concerned in the present case with any question save as to the applicability of the provision, and its validity, and as we find it to be both applicable and valid, effect must be given to it." (p. 197.)

Plaintiffs cite a number of cases which tend strongly to support their contention, but which merely illustrate the conflict in the authorities and the confusion which prevailed in the decisions upon this and kindred questions before the development and expansion of the law relating to interstate commerce brought about by the Carmack amendment to the interstate commerce act and subsequent amendments. Referring to the expansion of the law relating to interstate commerce Mr. Justice Dawson, speaking for the court in *Kirby v. Railroad Co.*, 94 Kan. 485, 146 Pac. 1183, said in the opinion:

"Indeed, so rapidly has the law relating to interstate commerce expanded in recent years that a new branch of the lawyer's profession has arisen to deal with it, and the bibliography of the law of interstate commerce is growing rapidly by textbooks and judicial decisions." (p. 489.)

To the same general effect, see also *Mollohan v. Railway Co.*, 97 Kan. 51, 53, 154 Pac. 248, and *Railway Co. v. Stannard & Co.*, 99 Kan. 720, 162 Pac. 1176. In the last cited case Mr. Justice Dawson said in the opinion:

"At common law the relations of the carrier, shipper and consignee were left largely to their private agreements, which were usually evidenced by their bills of lading and shipping contracts. Prior to 1887 these matters had received little legislative attention from congress, and in dealing with controversies arising over interstate shipments the courts interpreted the contracts of the parties and generally applied the principles of the common law. Since the adoption of the interstate commerce act of 1887, however, and especially by its later amendments, much of the old law and many of the old decisions have been superseded. (*Kirby v. Railroad Co.*, 94 Kan. 485, 489, 146 Pac. 1183; *Railroad Co. v. Utilities Commission*, 95 Kan. 604, 618-620, 148 Pac. 667.)" (p. 722.)

The same clause of the uniform bill of lading has been construed also by the interstate commerce commission. In *Shaffer & Co., v. C., R. I. & P. Ry. Co.*, 21 I. C. C. Rep. 8, after discussing the reasons for the approval of this provision in the contract, it was said:

"It was found upon consideration of the entire matter that it would be the wiser policy to adopt the value of the commodity at the time and place of shipment, and especially to accept the invoice value. This renders the ascertainment and adjustment of damages comparatively easy and tends materially to check the litigious prosecution of exaggerative claims of damage. Moreover, it must be remembered that although the rule works to the advantage of the carrier when the market price has advanced subsequent to the date of shipment, it benefits the shipper in case

the market price at destination should decline; and it seems fairly probable that in the long run the rule would be of advantage to the shipper as often as it is to the carrier." (p. 12.)

In reaffirming a former decision upholding as valid the same clause the supreme court of South Carolina said:

"The provision in the bill of lading was merely intended to establish a rule for determining the value of property in case of loss, irrespective of the fact whether it was greater at the point of shipment or destination, which could not be foreseen on account of the fluctuation in prices. It was for this reason that such a rule was upheld in *Matheson v. Ry.*, 79 S. C. 155." (*Grubbs v. Railroad Company*, 101 S. C. 210, 212.)

Public policy requires that provisions of this character in bills of lading, the forms of which have been approved by the interstate commerce commission, shall be upheld, and that the carrier in the settlement and adjustment of all claims for damages arising under the contract shall in each instance enforce its provisions, and it is the policy of the courts to enforce them uniformly rather than open the door to abuses which might result from the opportunity which would otherwise be afforded to grant to one shipper more favorable terms than to another. (*Abell v. Railway Co.*, 100 Kan. 238, 164 Pac. 269; *Easdale v. Railway Co.*, 100 Kan. 305, 164 Pac. 164.) In our opinion the measure of damages as fixed by the contract is reasonable, valid and controlling. The provision is intended to establish a rule for determining the value of the property in the event of loss and not, as plaintiffs contend, to limit or diminish the carrier's liability.

There is a further contention that it was error to allow interest on the amount of the judgment from the time the cause of action accrued. This is correct. It was said in *Grain Co. v. Railway Co.*, 96 Kan. 1, 149 Pac. 744, that in an action against a carrier for damages on account of the injury to or destruction of property in transit interest is not recoverable.

The judgment will be modified by reducing the amount to $83.53, and as thus modified will be affirmed.