Caston v. Railway Co.

No. 22,218.

A. G. CASTON, *Appellee*, v. CHARLES E. SCHAFF, as Receiver of THE MISSOURI, KANSAS & TEXAS RAILWAY COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

1. COMMON CARRIER—*Delay in Shipment of Live Stock—Evidence—Findings of Negligence.* The evidence examined, and held sufficient to maintain the action and to support the verdict, special findings, and judgment, touching a carrier's negligence in delaying the transportation of a carload of horses and mules at the place where the shipment originated.

2. SAME—*Delay in Transporting Live Stock—Measure of Damages Under Written Claim Presented.* Where a shipping contract for the carriage of live stock provided that the shipper, within four months, should file with some agent of the carrier a written claim for damages, giving the amount of the damages, and stipulating that "no damages can be recovered except those set forth in the required written notice and claim aforesaid and in no greater amount than claimed in said notice," it is held that such stipulation is reasonable, and that the shipper's right of recovery is limited to the specified items of damage set out in his written claim presented to the carrier, and allowances made by a jury in excess of any of the itemized claims thus presented by the shipper must be reduced and limited thereto.

3. SAME—*Amount of Judgment Modified.* Allowances made by a jury in excess of plaintiff's written demand upon the carrier reduced, and the judgment modified and affirmed.

Appeal from Bourbon district court; EDWARD C. GATES, judge. Opinion filed November 8, 1919. Modified and affirmed.

*W. W. Brown, James W. Reid,* both of Parsons, and *John H. Crider,* of Fort Scott, for the appellant.

*John H. Crain,* of Fort Scott, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: The plaintiff sued the defendant for damages to a carload of horses and mules (5 horses and 16 mules) shipped from Fort Scott to Beaumont, Tex., over defendant's railway and connections.

The animals were loaded at Fort Scott, about 4:30 p. m., on March 2, 1916, and were to go out on a train due to arrive at

4:50 p. m., and to depart about 5 p. m.; but for various reasons the train did not arrive, and the car did not move out of Fort Scott until the following day about 3:15 a. m.

The afternoon when the animals were loaded was misty and stormy, and the night turned bitterly cold, with snow and a hard wind. This delay and consequent exposure gave the animals a bad start on their long journey, and they reached Beaumont in very bad condition, and one horse died.

The plaintiff filed with the defendant a written claim for damages, viz.:

| | | |
|---|---|---:|
| For one horse which died of exposure | | $200.00 |
| Damages to 2 horses ($50 each) | | 100.00 |
| Damage to 1 horse | | 50.00 |
| " | 1 blue mare mule | 25.00 |
| " | 1 bay mule | 10.00 |
| " | 1 sorrel mule | 10.00 |
| " | 1 black mule | 10.00 |
| " | 1 mare mule | 10.00 |
| " | 11 other mules ($15.00 each) | 165.00 |
| | Total damages claimed | $580.00 |

This claim for damages being disregarded, the plaintiff's action was begun. Negligence and delay in transportation were charged and the consequent damages alleged. The defendant's answer, among other matters, set up the shipping contract.

The cause was tried before a jury, and certain special questions were answered:

"1. If you find for the plaintiff state on what grounds of negligence you base your verdict? Ans. Delay in Ft. Scott, Kansas.

"2. If you find for the plaintiff and find that there were any negligent delays to the shipment in question, state where such negligent delays occurred? Ans. Ft. Scott, Kansas.

"5. If you find for the plaintiff, state how much, if anything you allow him for depreciation in value as follows:

"(A) For how many head of horses and how much per head? Ans. Five head, $56.00 per head.

"(B) For how many head of mules and how much per head? Ans. Sixteen head, $20.00 per head."

The defendant contends that there was no evidence to sustain the judgment, and that the verdict is excessive.

The evidence showed that there was a delay of ten or eleven hours at Fort Scott, and during that delay the horses and

Caston v. Railway Co.

mules were exposed to the fury of a March blizzard. It was also shown that while the animals could have been unloaded and sheltered in fifteen minutes, yet the agent of the defendant repeatedly told the plaintiff's caretaker that the train which was to take the car of animals away "would not be very long," and about midnight the agent told the caretaker that the engine of the expected train had been taken to pull another train into Parsons, and that it would be another hour or two, probably, before he could get out.

But for this long and uncertain delay and the aggravating incidents pertaining thereto, the animals would not have suffered as they did. They could and would have been removed and sheltered from the storm. It is argued that the defendant had no control of the elements. He had control of this traffic; he had control of his agent at Fort Scott; he had control of the means of communication and of reporting the whereabouts of his trains and of their expected arrival. It would have required no great effort of diligence, no great amount of concern for the rights of his patron, the plaintiff, to have ascertained the fact that the arrival of the train at Fort Scott would be delayed for many hours, so that the plaintiff's valuable property could have been put in shelter from the storm. The suggestion is projected that the storm raged elsewhere than in Fort Scott, and that the animals would have been exposed to it even if the car was in a moving train. But it requires no expert testimony to learn that horses would strain and stir and therefore keep up the circulation of their blood in a moving train much better than when huddled in a standing car through the long hours of a cold, stormy night. Moreover, there was testimony to that general effect. The plaintiff testified:

"The cold weather would naturally have considerable effect on the horses, and it was the cold weather that really did have the effect on them. . . . It was below freezing, very cold. . . . They wouldn't keep as warm standing down there as if the train was in motion."

It must be held that the demurrer to plaintiff's evidence was properly overruled, and that the evidence was sufficient to sustain the general verdict and the special findings pertaining to negligence.

There is, however, considerable merit to defendant's complaint as to the amount of the verdict and judgment. The shipping contract provided:

"The shipper further expressly agrees that as a condition precedent to his right to recover for any loss or damage resulting from . . . damages caused by the negligent delay or delays of the carrier or negligent handling by the carrier . . . the shipper shall within four (4) months after the happening of the injuries or delays complained of, file with some freight or station agent or the Freight Claim Agent of the carrier on whose line the injuries or delays occurred, his written claim therefor, giving the amount. Shipper's failure to comply in time and manner with the requirements of this section shall absolutely defeat and bar any cause of action for any injuries or delays to said live stock as aforesaid against any carrier, and no damages can be recovered except those set forth in the required written notice and claim aforesaid and in no greater amount than claimed in said notice."

The general features of such shipping contracts are valid. (*Abell v. Railway Co.*, 100 Kan. 238, 164 Pac. 269; *Easdale v. Railway Co.*, 100 Kan. 305, 164 Pac. 164; *Wallingford v. Railway Co.*, 101 Kan. 544, 547, 167 Pac. 1136; *Achen v. Railway Co.*, 103 Kan. 668, 175 Pac. 980.)

In *Abell v. Railway Co.*, supra, Chief Justice Johnston, speaking for the court, said:

"Written notice of the claim of injuries and damages is expressly required by the contract. Doubtless the purpose was that the nature of the injury *and the extent of the claim* may be made definite so that the carrier may examine the cattle as to the claimed injury while the evidence of loss and injury is available. It is the view of the court that the specific requirement that the notice shall be in writing is one which cannot be waived. The provisions regulating interstate commerce as between carrier and shipper are intended to be of uniform application. If the carrier should exact a written notice from one shipper and waive it as to another it might lead to unjust discriminations and the abuses which the commerce acts were designed to prevent. In contracts providing that damages of the kind in question shall not be recoverable unless the claim is made within fixed times it has been held that the limitation cannot be extended or waived by the carrier." (p. 240.)

The stipulation in the shipping contract—"that no damages can be recovered except those set forth in the required written notice and claim aforesaid and in no greater amount than claimed in said notice,"—is reasonable, and must be respected. While the plaintiff alleged and proved the value of the horse that died to be $200, yet the shipping contract fixed its value at $150, and no greater recovery could be allowed. (*Kirby v. Railroad Co.*, 94 Kan. 485, 493, 146 Pac. 1183; *Kennedy v. Railway Co.*, 104 Kan. 129, 179 Pac. 314.) But that is not im-

Caston v. Railway Co.

portant here, since the jury only allowed $56 damages on each of the horses, and as only five horses were shipped, the jury's finding must be construed as an allowance of $56 for the horse that died.   It will also be noted that the claim for damages which was filed with the railway company made no claim for damages to five horses, but only for the one which died and three others.   No allowance can be made for the horse for which no claim of damages was filed.   As to the others, the claim filed was for $50 each.   The jury allowed $56 each. These items must therefore be reduced to $50 each.   As the claim for damages to the blue mare mule was $25, and only $20 was allowed by the jury, that item can stand.   On four other mules, however, the claim was only for $10 damages to each, and the jury allowed $20 on each.   These allowances must be reduced to the amount claimed, and the same defect inheres in the jury's allowance on the eleven other mules.   On those, the claim was for $15 damages to each mule, while the jury allowed $20 per head.   Summarizing, then, and modifying the jury's various allowances to conform to plaintiff's formal claim as presented to the defendant, the result is—

| | |
|---|---:|
| For the dead horse | $56.00 |
| For 3 other horses | 150.00 |
| For one blue mare mule | 20.00 |
| For 4 other mules | 40.00 |
| For 11 other mules | 165.00 |
| Total | $431.00 |

It follows that the judgment for $600 is excessive, and should be reduced to $431; and upon such modification the judgment will be affirmed.