## M. S. CARTER v. C. H. PRATT.

STATUTE OF LIMITATIONS; *Title to Personal Property.* In 1871 a railroad was constructed across the land of P., in Allen county. Ties were put down, and iron rails spiked to them, but the road was never used. On January 27, 1874, P. commenced an action in the district court of Allen county against the railroad company for damages, for appropriating his land to its purposes. Judgment was obtained November 23, 1874, and the iron rails in controversy were sold on an execution to P. Thereafter, and prior to May 1, 1875, P. loosened the rails from the railroad ties and placed them in piles upon his own land, and continued in possession of them, under claim of ownership, till February 28, 1878. The judgment of November 23, 1874, is alleged to be void for want of service. *Held*, That conceding the judgment to be a nullity, yet P., on February 28, 1874, was entitled to the rails, as the title to them had passed to him by virtue of the statute of limitations.

*Error from Allen District Court.*

REPLEVIN, brought by *C. H. Pratt* against *M. S. Carter* and *A. J. French,* on February 28, 1878, for fifty thousand pounds of bars of railroad iron, of the value of five hundred dollars. Trial at the June Term, 1878, by the court, a jury having been waived. The court made the following findings of fact:

1. That the iron in controversy was laid by the Fort Scott, Humboldt & Western railway company, and upon a road-bed permanently constructed by said company.

2. That the construction of said road-bed and the laying of the iron thereupon was done by said company during the summer and fall of 1871, and was upon the lands of the plaintiff, owned and cultivated by him at that time, and continuously therefrom owned by him until the present time, and partially cultivated by him during all said time except for one year.

3. That the construction of said road-bed and the laying of the iron thereupon was with the knowledge and consent of the plaintiff, but with the expectation by him that the said railroad company would pay to him full compensation therefor or cause the land appropriated by it for that purpose to be condemned according to the law of the land.

4. That the iron so laid was spiked to cross-ties first placed upon said road-bed, and the placing of the ties and the spiking of the iron rails thereto was done in the same manner that is usual to new railroads.

5. That the iron so laid remained as it was laid by said company, until the 11th day of January, 1875, when the plaintiff, between that time and the 1st day of May, 1875, loosened it from the ties and placed it in piles upon his own lands and upon the same tract of land through which the road-bed was constructed and on which the iron was laid by said company.

6. That the said road-bed and iron have never been used by the said railway company, or by any other railroad company or person, as or for a railroad, and neither has any portion of the road-bed or iron constructed and laid by said company at any other place along the line of the said proposed railway been used for any such purpose.

7. That a short time before the commencement of this suit the defendant French, acting as agent and representing the

defendant Carter, applied for permission to remove the iron so piled up by him; that plaintiff refused the request except he was first paid therefor, and that French thereupon stated to plaintiff that he would not remove it until it was settled for.

8. That the iron loosened and piled up by plaintiff as aforesaid, remained as aforesaid until the 28th day of February, 1878, when the defendant French, acting as agent for and representing defendant Carter, went upon said lands of plaintiff with men and teams, and took possession of and removed said iron without plaintiff's knowledge or consent.

9. That the said iron was loaded by the said French on the cars of the L. L. & G. railroad company, together with a large amount of the same kind of iron claimed by defendant Carter, and was more or less mixed with the iron so claimed by defendant.

10. That the said Fort Scott, Humboldt & Western railway company, and the defendants Carter and French, have not paid or offered to pay to said plaintiff for, nor had condemned the land appropriated by them, and they have not paid or offered to pay to said plaintiff any sum whatever for the iron so taken and removed by them.

11. That the defendant Carter claims to be the owner of the iron in controversy, because of an alleged purchase by him of the same under certain proceedings had and obtained in the circuit court of the United States in and for the district of Kansas, at its November term, 1874, and for no other reason.

12. That by such proceedings the defendant Carter obtained a judgment against the F. S. H. & W. Rly. Co., and other defendants, the plaintiff herein not being a party therein, for the sum of $15,456.76, and also a decree in substance that for the purpose of providing funds for paying the said judgment, the following mortgaged property be sold, viz.: All and singular the portion of the railway of the Fort Scott, Humboldt & Western railway company, which said company has constructed, or by law is authorized to construct, from Fort Scott to Humboldt and from Humboldt westward to the Arkansas river, as the same is or shall be hereafter constructed, a distance in the aggregate of about one hundred and fifty-four miles, together with all lands and hereditaments acquired and appropriated for depots, superstructures, buildings, erections and fixtures on said line of

railway, and all tracks, bridges, viaducts, culverts, fences, and all houses and buildings thereon or appertaining thereto, and all other property, real or personal, owned by said company on the first day of November, 1871, or thereafter to be acquired by said company for the construction, maintenance and operation of said railway. That said decree also provided that such sale should be made by a special master appointed for that purpose, who was directed in said decree that, "if said sale shall be confirmed by the court," he should execute a proper conveyance to the purchaser or purchasers at said sale.

13. That the property described in said decree was sold to the defendant Carter on the 16th day of February, 1875, and the said special master executed and delivered to him a conveyance of said property on the 21st day of June, 1875.

14. That there is no evidence showing or tending to show that said sale was confirmed by said court, save and except that said special master executed the conveyance as aforesaid.

15. That on the 27th day of January, 1874, plaintiff commenced suit in the district court of Allen county, Kansas, against the F. S. H. & W. railway company, for the recovery of damages; that on the 16th day of November, 1874 he recovered a judgment against the said company for the sum of $400; that execution issued on said judgment November 20, 1874; that the iron in controversy was levied upon thereunder on the 23d day of November, 1874, and that the same was sold on said execution to the plaintiff herein on the 6th day of January, 1875.

16. That the mortgage, by virtue of the foreclosure of which the decree of sale was made by the circuit court of the United States as aforesaid, was recorded in the office of the register of deeds of Allen county, Kansas, before the judgment of the plaintiff above referred to was obtained.

17. That at the time the iron was being removed by the defendant French, he (French) admitted to George A. Amos, the attorney of plaintiff, that the iron belonged to plaintiff, and that he had made arrangements to pay Pratt for the same.

Judgment in favor of the plaintiff. *Carter* brings the case here.

*Cates & Keplinger,* for plaintiff in error.

*Geo. A. Amos,* and *A. A. Harris,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: The findings of the trial court show that the defendant in error, the plaintiff below, obtained actual possession of the personal property in controversy prior to May 1, 1875, and continued in such possession until February 28, 1878, more than two years. This possession, by the testimony, was under claim of ownership, without the authority of the owner, and inconsistent with his rights. If the sale of the property on January 6, 1875, to defendant in error by the sheriff, was valid, which can scarcely be claimed, he then became the lawful owner of it; but if, as contended by counsel for plaintiff, the sale was void on the ground that the judgment was a nullity for want of service, the taking of the possession under the void sale caused the statute to commence to run at once.

The defendant in error therefore having had undisputed possession of the property for more than two years prior to February 28, 1878, is clearly protected by the statute of limitations. (Civil Code, § 18.)

The judgment of the district court will be affirmed.

All the Justices concurring.