No. 19,580.

D. D. RAY and R. COBB, Partners, etc., *Appellees*, v. THE MISSOURI, KANSAS & TEXAS RAILWAY COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

1. INTERSTATE SHIPPING CONTRACT—*Limiting Time in Which Action for Damages May be Brought—Provision Valid.* A contract for an interstate shipment of cattle contained, among other things, a stipulation that an action by the shipper to recover damages because of injuries and delays occurring during the transportation must be commenced within ninety-one days after the happening of the injuries and delays. *Held*, that the provision is not unreasonable nor invalid.

2. SAME—*Negotiations Did Not Show Waiver of Provision.* Mere negotiations between the parties as to settlement or compromise of the claim did not waive the contract limitation nor estop the carrier from insisting that the right to sue had been lost by lapse of time.

Appeal from Labette district court; ELMER C. CLARK, judge. Opinion filed June 12, 1915. Reversed.

*W. W. Brown*, and *James W. Reid*, both of Parsons, for the appellant.

*Archie D. Neale*, of Chetopa, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: This action was before this court on a previous appeal. (*Ray v. Railway Co.*, 90 Kan. 244, 133 Pac. 847.) Two actions were originally brought in justice court by plaintiffs to recover damages on two shipments of live stock from Electra, Tex., to St. Louis, Mo. The actions were consolidated in an appeal to the district court, where the plaintiffs were successful, and on an appeal to this court the judgment of that court was reversed and a new trial ordered. On the second trial the plaintiffs again prevailed, and the railway company appeals.

It appears that on or about October 22, 1910, plaintiffs shipped seven cars of cattle from Electra, Tex., to National Stock Yards at East St. Louis, Ill., or St. Louis, Mo., as the destination is spoken of. Four of the cars, containing one hundred two head of cattle, were consigned to one commission firm, and the other three cars, containing seventy-four head of

cattle, were consigned to another firm.    Contracts covering the shipment provided for the filing of a verified claim for any damages caused by injury or delay within thirty days after the happening and that any suit for damages should be begun within ninety-one days after the happening.    It appears that with ordinary handling the cattle should have arrived at destination in time to have been marketed on October 25, 1910, but for some reason did not arrive until about 7 p. m. of that day, causing them to be marketed on October 26, 1910, when, it is claimed, the market price had fallen ten cents a hundred and the cattle had shrunken.    Claims were presented to the railway company by the commission firms in behalf of plaintiffs on October 31 and October 26, 1910, respectively, for the loss on the shipments: on the four-car shipment, $226.63, comprising $123.67 for "25 lbs. per head excessive shrink on 102 steers—2550 lbs. @ $4.85 per cwt.," $98.71 for "10c per cwt. decline on 98,710 lbs.," and $4.25 for extra feed rendered necessary; on the three-car shipment, $163.13, comprising $87.87 for "25 lbs. shrink on 74 steers 1,850 lbs. @ 4.75," $71.01 for "10c depreciation in value of cattle account appearance," and $4.25 for additional feed.    The railway company, after investigating the claims for some time, offered to pay in settlement of the former $76.92 and of the latter $92.47. This was not acceptable, it appears, to plaintiffs and this action was begun.    Defendant's demurrer to plaintiffs' reply was overruled, and on the trial the jury returned a verdict for plaintiffs in the sum of $305.51.    Defendant's motion for a new trial was overruled, and it now appeals from the judgment rendered against it.

The principal complaint of the defendant is that a recovery was permitted although the shipping contracts expressly provided that any action for damages would be waived unless it was begun within ninety-one days after the injury was sustained; that the alleged damage was sustained on October 26, 1910, but that the action was not commenced until September 11, 1911.    The cattle were loaded at Electra, Tex., where there is no railroad agent, and when they reached Wichita Falls, Tex., which has the necessary facilities, the contracts were signed in behalf of the plaintiffs by the parties in charge of the cattle and who accompanied them to St. Louis.    While a

witness stated that some one at Wichita Falls told the representatives of plaintiffs to sign the contracts and that they must be signed before the train went out there is nothing in the record showing duress in the execution of the contracts, and it is expressly stated that fraud is not charged or relied on by the plaintiffs. The parties used the contracts as transportation on the trip to St. Louis and nothing is found in the testimony inconsistent with their validity. The contracts being valid and the shipment being interstate the federal law controls, and under numerous decisions limitations in shipping contracts like those in question are held to be reasonable and valid. (*Ray v. Railway Co.,* 90 Kan. 244, 133 Pac. 847; *Watt v. Railway Co.,* 90 Kan. 466, 135 Pac. 600; *Adams Express Co. v. Croninger,* 226 U. S. 491, 33 Sup. Ct. Rep. 148, 57 L. Ed. 314; *Mo., Kans. & Tex. Ry. v. Harriman,* 227 U. S. 657, 33 Sup. Ct. Rep. 397, 57 L. Ed. 690; *Kansas Southern Ry. v. Carl,* 227 U. S. 639, 33 Sup. Ct. Rep. 391, 57 L. Ed. 683; *Mich. Cent. R. R. v. Vreeland,* 227 U. S. 59, 33 Sup. Ct. Rep. 192, 57 L. Ed. 417.) The action, as we have seen, was not brought within ninety-one days after the loss was sustained nor until three hundred twenty days after that time.

It is insisted by plaintiffs that compliance with the condition limiting the time for bringing the action was waived by the defendant. No attempt was made to prove an agreement to waive the limitation nor of any intention of the defendant to relinquish any right it had under the shipping contract. Waiver is largely a question of intention. There is no waiver unless so intended by one party and so accepted by the other. (40 Cyc. 261.) It is claimed, however, that defendant's statements and acts are such as to estop it to insist on the application of the limitation. A number of letters were exchanged between the parties, and the contention is that the statements therein contained were such as to lead the plaintiffs to the belief that the requirement that an action upon the claims must be brought, if at all, within ninety-one days had been abandoned and that a strict compliance with it would not be insisted on. It may be assumed that the condition can be waived, and also that one party may so act as to mislead another and so as to be estopped to say that noncompliance with the condition is a bar to the maintenance of the action.

Here, however, the letters on which estoppel is rested were not written until long after the stipulated period of limitation had expired.  The time began to run on October 26, 1910, and the first letter of the defendant touching the subject and upon which a claim of estoppel is rested was written near the end of the following April, and at that time the bar was complete and the right to bring the action had long since been lost.  The subsequent correspondence disclosed a disposition on the part of the defendant to investigate the merits of the claims and to settle and compromise so much of them as were deemed to be just, but nothing indicating an intentional relinquishment of any of the rights and advantages stipulated under the contract. The first communication from defendant was a letter written on November 5, 1910, to one of the commission firms who had transmitted a claim to it, but it is no more than an acknowledgment of the receipt of a claim which was made in behalf of the plaintiffs.  The purport of subsequent letters will be stated. On April 29, 1911, a letter was written by the auditor of the company, in response to one by the representative of the plaintiffs, stating that the defendant had taken up the claims with the legal department and would be in a position in a few days to advise as to settlement.  On May 20, in response to another inquiry in which it was stated that the claims had been turned over to an attorney, the auditor wrote that they were receiving attention and would not be unnecessarily delayed, and that the matter had been referred to their attorney in Kansas, and as soon as his report was made they would advise plaintiffs of what disposition would be made of the claims.  On June 23, 1911, the plaintiffs' attorney wrote to the auditor of the defendant that the claims were in his hands for adjustment, and that unless adjustment was soon made suit would be brought thereon.  It was further stated that he would only wait a few days to know the purpose of the defendant.  On June 29, 1911, the attorney for the plaintiffs again wrote with respect to the claims, stating that the defendant had had them under consideration since the 26th day of last October, long enough to have ascertained the facts and determined what they proposed to do.  He also added that he expected to leave his office about the 7th day of July for a time and that he must know about the claims, and if settlement was not made before that time he

expected to institute suits on them. In July the auditor of the defendant wrote the attorney for plaintiffs in respect to the claim for $163.13, saying that their investigation showed the claim to be excessive, both as to the shrinkage of the cattle and also as to depreciation in value, and he added:

"We are willing in order to dispose of this claim and avoid any further controversy to allow $92.47 in full settlement.

"Kindly advise if we shall issue voucher in favor for that amount."

On July 3, 1911, the defendant answered the attorney with respect to the claim for $226.63, stating that investigation had not been completed as to that shipment, but that they were handling the matter by wire and would advise something definite as to the disposition of the claim in the near future. On July 18 the auditor of the defendant wrote in respect to the claim for $226.63, saying that the bill submitted was not justified, that the company was willing, in order to dispose of the claim, to allow a reasonable shrink together with extra feed, and stating: "We are willing to allow $76.92 in full settlement of this claim."

The statements of defendant in its correspondence with the plaintiffs indicate a desire to compromise and settle the claims even after the right to sue on them had been lost, but the statements and negotiations about settlement at that time can not be regarded as the surrender of any right by the defendant or the waiver of a bar which had already fallen. In a case of contract limitation as to the time in which an action may be brought and where the time had not yet expired it has been held that negotiations for a settlement will not have the effect to waive the time limit nor estop a party from asserting that the right to maintain an action has been lost. (*Gooden v. Amoskeag Fire-Insurance Company,* 20 N. H. 73; *Blanks v. Insurance Company,* 87 La. [36 La. Ann.] 599; *McFarland & Steele v. Peabody Insurance Co.,* 6 W. Va. 425; *Phœnix Ins. Co. of Brooklyn v. Lebcher,* 20 Ill. App. 450; *Metropolitan Accident Ass'n v. Clifton,* 63 Ill. App. 152.)

There is no basis for a claim that the plaintiffs were induced to postpone the commencement of an action within the stipulated time by anything said or done by the defendant as none of the letters touching the subject was written until long after the limitation had expired. The last letter of defendant relat-

ing to the compromise and settlement was written on July 18, 1911, and the suit was not brought until fifty-four days after that time. If the letters had been written before the time limit had expired and had been such as to have induced plaintiffs to delay bringing suit until after the stipulated time and because of that the plaintiffs had become entitled to a reasonable time after the final offer made by defendant to begin an action it could hardly be contended that the action was brought in a reasonable time after July 18, 1911. However, the limitation, as we have seen, was not waived and the right to sue was lost to the plaintiffs in ninety-one days after the damages were sustained.

Because the right to sue had been lost long before the action was brought the judgment must be reversed and the cause remanded with directions to enter judgment in favor of defendant.