### THE HENRY S. GROVE.

(District Court, W. D. Washington, N. D.   September 12, 1923.)

No. 7005.

1. **Shipping ⬅═142—Limitation of action for cargo damage is valid, if reasonable.**
     Provisions in a bill of lading limiting the time within which to present claim for loss or damage to cargo, and within which to bring an action therefor, if reasonable, are binding.

2. **Shipping ⬅═142—Limitation of time for giving notice of damage to cargo and for bringing suit therein held waived.**
     Where the carrier has had all the benefit of a formal notice of a claim for damage to cargo, and especially when by agreement of the parties a survey has been made, the necessity for formal notice is obviated, and where a settlement has been in effect promised by the carrier to secure payment of the freight, a limitation in the bill of lading of time for bringing suit is waived.

3. **Shipping ⬅═106—Bill of lading, accepted by shipper after shipment is made, is binding.**
     The parties are bound by the terms of a bill of lading accepted by the shipper, though after the shipment has been made under a booking agreement.

In Admiralty. Suit by the Wallace Equipment Company against the steamship Henry S. Grove and the Atlantic, Gulf & Pacific Steamship Corporation. Decree for libelant.

Libelant seeks to recover damages to and loss of cargo of steel on a booking contract of affreightment. After filing of libel, and before answer, the claimant was adjudged bankrupt, and the ship's underwriters undertook the defense in the name of the claimant. At trial the underwriter had withdrawn, and the defense is carried on in the name of the claimant, with knowledge of the trustee in bankruptcy by the surety for the release of the ship. November 14, 1921, the following letter was submitted by the claimant to the libelant:

"November 14th, 1921.

"Wallace Equipment Company, Spokane St. and 11th Ave. S. W., Seattle, Washington—Gentlemen: Attention: Mr. Gaumite. This will confirm book-

ing made by your company with us this date, covering movement of from 1,000 to 1,200 tons steel, consisting of plates, channels, shapes, etc., and miscellaneous supplies, including bolts, nuts, screws, etc., from Norfolk to Seattle, per our S. S. Cape Romain, which is expected to load at the Norfolk & Western terminals during the next two weeks, exact loading date of which we will advise you shortly. Rate on this shipment to be $12.50 per ton of 2,000 pounds, and delivery to be made direct by vessel to ship's tackle your plant at Seattle. We have wired our Eastern representative for approximate loading date of the Cape Romain at Norfolk, and hope to be able to pass this information along to you to-morrow. Kindly confirm your acceptance of the above and oblige.

"Yours very truly, Atlantic, Gulf & Pacific S. S. Corp.

"Accepted: Wallace Equipment Co., By E. W. G."

Acceptance is indorsed thereon. By consent the steamship Henry S. Grove was substituted for the steamship Cape Romain. The cargo was delivered to the ship pursuant to stipulation. A representative of libelant was present during a part of the time of loading at Norfolk. Nothing was said at any time about the cargo moving forward under the conditions of any form of bill of lading. Several days after the cargo was loaded and the ship sailed, the bill of lading, Exhibit 4, was forwarded to the libelant by mail at Seattle. This bill of lading was not signed by the shipper. Upon the arrival of the cargo at Seattle, and upon discharge, the libelant on the 9th of February paid to the claimant the freight charges upon the cargo in the sum of $12,705.01, after some conference with the agent of the claimant, in which the libelant objected to the payment of the freight until the damage had been adjusted, and upon the statement of the representative of the claimant that the payment would not prejudice the claim "as the claimant was very liberal in adjusting all claims for loss or damage to cargo shipped over its line."

The bill of lading forwarded to libelant contained stipulations and conditions that all claims for loss or damage must be presented within 30 days after discharge of cargo, and that suit must be commenced upon the asserted claim within 90 days, and failure to comply with these conditions should bar right of action. Shortly after the discharge of the cargo, at the request of claimant, Johnson & Higgins, for claimant, caused a survey to be made of the condition of the cargo after it was discharged at Seattle, by Messrs. Fowler and Corey, marine surveyors. This inspection was made from March 8th to April 13th, and reported as submitted. Thereafter, in harmony with this report, a claim was filed by the libelant. At the suggestion of the claimant, this claim was reduced by amendment. This was filed by the libelant, with the understanding that it would be paid immediately. Negotiations continued between the parties until this libel was filed. It is the contention of the libelant that it is entitled to recover for the full amount of damage to cargo delivered and for shortage of cargo. Respondent and claimant contend that the libelant may not recover: First, for the reason that the action is barred by stipulation in the bill of lading (a) that no claim was presented within 30 days; (b) that no action was commenced within 90 days; second, that the cargo was delivered at the libelant's dock, Seattle, in the same condition in which it was received.

Cosgrove & Terhune, of Seattle, Wash., for libelant.

William H. Gorham, of Seattle, Wash., for respondent and claimant.

NETERER, District Judge (after stating the facts as above). [1] The stipulations in a bill of lading limiting the time within which to present claim for loss or damage and within which to bring an action, if reasonable, is binding. The Queen of the Pacific, 180 U. S. 49, 21 Sup. Ct. 278, 45 L. Ed. 419; Southern Exp. Co. v. Caldwell, 21 Wall. 264, 22 L. Ed. 556; Mo., Kan. & Tex. Ry. Co. v. Harriman, 227 U. S. 672, 33 Sup. Ct. 397, 57 L. Ed. 690; Gooch v. Ore. S. L. Ry. Co., 258 U. S. 22, 42 Sup. Ct. 192, 66 L. Ed. 443. It is apparent from the rec-

ord that the libelant and claimant sought to adjust the controversy,. irrespective of the legal, technical rights of the parties under the contract of shipment, and without respect to a waiver of the limitation,. until the letter of the libelant of July 12, 1922, in which libelant requested Johnson & Higgins, acting for claimant, to furnish a waiver, so as to allow time in which to investigate the claim. July 13th Johnson & Higgins replied:

"* * * We do not care to waive the clauses in the bill of lading with reference to time limited for bringing suit. * * *"

[2] While the negotiation for compromise of claim, it seems, does not waive the contract of limitation, nor surrender the right of a bar which had already fallen (Ray v. Railway Co., 96 Kan. 8, 149 Pac. 397, L. R. A. 1916D; 1046; Howard v. Railway Co., 161 Ky. 783, 171 S. W. 442; Letts v. Railway Co., 131 Mo. App. 270, 111 S. W. 141; Vencill v. Railway Co., 132 Mo. App. 722, 112 S. W. 1030), it is settled, however, I think, that where all of the benefits of notice are placed before the carrier as fully as should be done by a formal notice, the necessity for the formal notice is obviated (10 C. J. 338). Especially is this the case where the carrier, with the aid of the shipper, has made an examination of the nature and extent of the injury, and has obtained as full information as a notice would have disclosed. Castner v. Ore. Ry. Co., 89 Wash. 696, 155 Pac. 167. In the instant case the shipper immediately notified the carrier of the damage and loss, and protested the payment of the freight. The carrier stated that the payment would not prejudice the claim, as the company was liberal in its adjustments and immediately requested its representative, Johnson & Higgins, to cause a survey of the damage to be made. The surveyors, at the request of the shipper, made a report, and pursuant to negotiations between the shipper and claimant the shipper filed its claim. Thereafter the claimant asked libelant for a revision of its damage claim, which was done, and on June 9th wrote libelant for its original expense bills which were furnished June 10th. On June 30th libelant wrote claimant and demanded payment, to which the claimant replied that the matter was in the hands of Johnson & Higgins, its representative, and stated:

"I trust this matter will be settled with your firm in a satisfactory manner, thus avoiding any legal action on your part."

And as late as July 10th claimant, by letter, asked for a statement of the steel shortage.

[3] The mere booking stipulations do not preclude the issuance or acceptance of a bill of lading by the shipper as expressing the terms of the agreement between them, and when this is done both the parties are bound by its provisions. In the instant case the only agreement is to ship the cargo for a stated compensation. There are no limitations of any sort, not even perils of the sea excepted. It is apparent, I think, from the entire record, that the bill of lading was understood by all of the parties as intending to express the real contract by which the mutual obligations of the parties were to be governed. The Caledonia (C. C.) 43 Fed. 681; The American R. Exp. Co. v. Lindenburg, 260 U. S. 584, 43 Sup. Ct. 206, 67 L. Ed. 414. It appears from the consideration

given to the bill of lading on its receipt by the libelant, and referred to throughout the negotiations, that the bill of lading was considered the basis of shipment. I think, however, that the carrier, by his conduct in this case, has waived the necessity of notice (10 C. J. 342; Adams v. Col. Ry. Co., 49 Colo. 475, 113 Pac. 1010, 36 L. R. A. [N. S.] 412), and that the requirements of presentation of claim and bring action within the time limited have been waived (Pac. Coast Co. v. Yukon Ind. Transp. Co., 155 Fed. 29, 83 C. C. A. 625). There is a further stipulation in the bill of lading, clause 7, which limits the amount of recovery, in case of loss or damage, to the value of the cargo at point of shipment, with the freight added, if paid.

Under the testimony upon the record in this case I am satisfied that the cargo was delivered to the vessel in apparent good order, that it was damaged by the shipper, and that the libelant should recover the value at point of shipment, which is 80 cents a hundred, with the freight added, less the amount which it received in the disposal of this cargo at Seattle, together with 6 per cent. interest on the amount of recovery from February 9, 1922.