No. 26,297.

The Farmers Grain and Supply Company, *Appellee,* v. The Atchison, Topeka & Santa Fe Railway Company, The Red Star Milling Company, and Edward Kelly, an Individual Doing Business as the Edward Kelly Grain Company, *Appellants.*

### SYLLABUS BY THE COURT.

1. Trover and Conversion—*Joint Liability—Wrongful Disposition of Grain.* Where a car of grain transported by a railway company under a standard bill of lading is consigned to the shipper with directions to notify a certain dealer at the point of destination, and it is there delivered to grain dealers without the surrender of the bill of lading and the grain is sold and disposed of without the consent of the owner and without compensation to him, the railway company and the grain dealers who contributed to the wrongful disposition of the grain are jointly and severally liable for the conversion of the grain.

2. Process—*Residence of Parties—Joint Wrongdoers.* All of the wrongdoers being jointly and severally liable, the bringing of an action against all in a certain county where one of them was served with process, entitled the plaintiff to procure the service of summons on the other defendants residing in another county, where the action was brought in good faith against all and the plaintiff was acting in the honest belief that he had a cause of action against all of the defendants, and the subsequent failure to recover against the resident defendant, does not. defeat jurisdiction over nonresident defendants or a recovery against them.

3. Carriers—*Limitation of Liability—Notice of Loss.* A stipulation in a standard bill of lading under which a shipment was made to the effect that claims for loss or damage must be made in writing, to the carrier, within four months after delivery of the property, and that unless claims are so made the carrier shall not be liable, is not unreasonable or invalid, and the fact that the carrier participated in the wrongful conversion of the

Appearances, 4 C. J. pp. 1335.n. 49, 1367 n. 84.  Carriers, 10 C. J. pp. 260 n. 36, 262 n. 64, 331 n. 54, 335 n. 98, 341 n. 78, 432 n. 40, 472 n. 2; 4 L. R. A. n. s. 1056; 4 R. C. L. 842.  Process, 32 Cyc. p. 427 n. 49, 50, 51; 27 R. C. L. 804. Torts, 38 Cyc. pp. 483 n. 91, 488 n. 14.  Trover and Conversion, 38 Cyc. pp. 2024 n. 32, 2056 n. 34.

property or that some of its employees had knowledge of the wrong and injury, did not avoid the stipulation nor warrant a recovery against it, where the claim was not made in accordance with the contract.

Appeal from Reno district court; WILLIAM G. FAIRCHILD, judge. Opinion filed January 9, 1926. Reversed as to the Atchison, Topeka & Santa Fe Railway Company, and affirmed as to the other defendants.

*William R. Smith, Owen J. Wood, Alfred A. Scott, Alfred G. Armstrong,* all of Topeka, *J. S. Simmons,* of Hutchinson, *Charles H. Brooks, Willard Brooks, Howard T. Fleeson, Thomas C. Wilson* and *Henry Lampl,* all of Wichita, for the appellants.

*C. E. Branine, H. R. Branine* and *H. F. Brown,* all of Hutchinson, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: The Farmers Grain and Supply Company brought this action against the Atchison, Topeka & Santa Fe Railway Company, the Red Star Milling Company, and The Edward Kelly Grain Company, alleging the conversion of a car of wheat by the defendants and asking a recovery of $1,990, the value of the wheat converted. Judgment for the amount claimed was awarded to plaintiff against all of the defendants, from which they appeal.

The plaintiff was engaged in the grain business in Galva, Kan., and on February 22, 1921, delivered the car of wheat involved to the railway company for shipment, consigned to the plaintiff's order at Wichita, with a notation to notify Hausam-Bateman Grain Company. A bill of lading was issued to plaintiff, to which it attached a sight draft on the Hausam-Bateman Grain Company, and it turned both over to the State Bank of Galva to be forwarded and delivered to the grain company. In some way unknown to the parties the bill of lading and draft were lost in transmission. In due time the car arrived at Wichita, when the railway company notified the Hausam-Bateman Grain Company, and that company requested the railway company to notify the Edward Kelly Grain Company, which notice was given. The latter company not being able to produce the bill of lading, the railway company demanded indemnity from it for any loss or damage which might result from a delivery of the wheat without the surrender of the bill of lading. The Edward Kelly Grain Company gave the railway company a certified check for $2,450 as security, and on March 5, 1921, the railroad company delivered the wheat to the Red Star Milling Com-

pany, on the order of the Edward Kelly Grain Company. Later the certified check of the Kelly Grain Company was returned to it, and in lieu of that check the Hausam-Bateman Grain Company gave its certified check for the same amount, and afterwards that company executed a bond indemnifying the railroad company against loss or damage by reason of the delivery of the wheat without the surrender of a bill of lading. This bond was accepted by the railway company, knowing of the loss of the bill of lading. It appears that the draft drawn was never paid and no payment for the wheat has ever been made either to the plaintiff or the State Bank of Galva. It appears that the Kelly Grain Company delivered the wheat to the Red Star Milling Company and received payment therefor, and the latter company appropriated the same to its own use, and this disposition of the wheat was made without the surrender of a bill of lading and without the consent or authority of the plaintiff. The plaintiff was the owner of the wheat and never parted with its ownership beyond the pledging of the same to the State Bank of Galva as security for the draft drawn, which the plaintiff was subsequently required to pay to that bank. All of the defendants were informed of the loss of the bill of lading, and the plaintiff also had early knowledge of the loss. On March 24, 1921, plaintiff addressed a letter to the Hausam-Bateman Grain Company relating to the shipment, the sending of the bill of lading and draft, and their probable loss. That company wrote the division freight agent of the railway company of the shipment, of the bill of lading and draft, of the delivery of the wheat without the surrender of a bill of lading after certified check had been given, and asking permission to give an indemnity bond to the railway company so that they might collect their money for the wheat. That officer wrote the general claim agent of the railway company and advised him of the delivery of the wheat on a certified check, and asked permission and approval of the taking of a bond in lieu of the certified check. This approval was given. While plaintiff knew of the loss of the bill of lading and draft as early as March 4, 1921, no claim was presented to the railway company for the wheat until February 13, 1922, nearly a year after the wrongful appropriation of the wheat.

The railway company contends that the plaintiff is not entitled to a recovery against it because of the failure of plaintiff to file a formal claim within four months after the wrongful delivery of

the grain. Among other provisions of the bill of lading were the following:

"The surrender of the original order, bill of lading properly indorsed shall be required before the delivery of the property. Claims for loss, damage or delay must be made in writing to the carrier at the point of delivery or at the point of origin within four months after delivery of the property or in case of failure to make delivery, then within four months after reasonable time for the delivery has elapsed. Unless claims are so made the carrier shall not be liable."

The defendants, other than the railway company, located in Sedgwick county, contended that they were illegally summoned and sued in Reno county, where the action was brought. It is conceded that jurisdiction of the railway company was obtained in Reno county, and under the statute when an action is rightly brought in one county a summons may issue to another against nonresident defendants. (R. S. 60-2502.) It is contended by the nonresident defendants that the action was not rightly brought against the defendants, because of plaintiff's failure to file a claim within four months after the wrongful delivery of the grain, and they insist that this failure not only released the railway company but released them from any liability for the wrongful conversion of the wheat. It appears that all of the defendants participated in the wrongful appropriation of plaintiff's wheat. All knew that it had been delivered without the surrender of a bill of lading, and with this knowledge each contributed its part to the misappropriation and their joint work occasioned the loss. Each party who took possession of the wheat, whether by purchase or otherwise, from one who had no power from the owner to dispose of it, is guilty of a conversion, and all who assist in the wrongful appropriation and disposition or shared in the proceeds thereof with guilty knowledge are guilty of a conversion and all are jointly and severally liable even though all may not have been equally guilty. (*Westbrook v. Mize,* 35 Kan. 299, 10 Pac. 881; *Barnhart v. Ford,* 37 Kan. 520, 15 Pac. 542; *Sharpe v. Williams,* 41 Kan. 56, 20 Pac. 497; *Brown v. Campbell Co.,* 44 Kan. 237, 24 Pac. 492; *Kansas City v. Slangstrom,* 53 Kan. 431; 36 Pac. 706; *Kansas City v. File,* 60 Kan. 157, 55 Pac. 877; *Luengene v. Power Co.,* 86 Kan. 866, 122 Pac. 1032; *McDaniel v. City of Cherryvale,* 91 Kan. 40, 136 Pac. 899; *Gooch v. Gooch,* 108 Kan. 416, 195 Pac. 874.) All the defendants being joint tortfeasors the plaintiff was at liberty to sue them jointly or severally at its option. It is argued, however, that the railway company

Farmers Grain Co. v. Atchison, T. & S. F. Rly. Co.

is not liable to plaintiff because a claim for the loss was not made to the company within four months after it was sustained, and that if it was not liable no jurisdiction was acquired over the other defendants sued with that company. There was a conversion of the wheat, as we have seen, to which each defendant contributed, and all were jointly liable for the concurrent wrongdoing. Assuming for the time that a recovery against the railway company cannot be had because of the delay in making a claim for the loss, that fact does not diminish the wrong committed by the defendants. There was community of wrongdoing and the railway company was liable at least for four months after the wrong was committed. Of course, if the suing of the railway company in Reno county was a trick done with no expectation of recovering a judgment against that company, but was merely brought there to obtain jurisdiction against the nonresident defendants in that county, the action against the latter could not be maintained. On the other hand, if plaintiff brought the action against the railway in good faith in an honest belief that it had a cause of action against it, jurisdiction against the nonresident defendants would not be defeated by the fact that some limitation or other prevented a recovery against the railroad company, one of the joint wrongdoers. (*Hawkins v. Brown*, 78 Kan. 284, 97 Pac. 479.) Nothing in the record indicates either bad faith on the part of the plaintiff in bringing the action against the railway company or that it was its purpose to abuse the process of the law and the court in order to gain jurisdiction of the other defendants. Moreover, the Edward Kelly Grain Company in its motion questioning the jurisdiction over it, alleged among other things that the petition did not state a cause of action against it or the other defendants, and further that it showed a misjoinder of parties. This averment related to the merits of the action, but it is not necessary to place jurisdiction over the defendant on this averment. The Red Star Milling Company filed its answer, pleading to the merits of the action before its motion attacking the jurisdiction was decided, and if it were necessary it might be held to be a proper party on that ground.

There is a further contention that the presentation of a claim against the railway company asking for the recovery of the loss sustained by the conversion of the wheat was an election to look to the railway company for the loss resulting from the misappropriation and that it operated to release the other defendants. Since

plaintiff might have sued them severally as well as jointly, a demand upon one wrongdoer in no sense barred a recovery against the other, of whom no demand was made. Plaintiff demanded payment of the loss from the railroad company arising from the conversion, and that is what is asked of the remaining defendants. We find no inconsistency in the action of the plaintiff in this respect.

There remains the question whether the plaintiff was entitled to enforce its claim against the railway company, which it appears was not presented until nearly a year after the loss was sustained. The record does not disclose any reason or excuse for the delay, and plaintiff was informed of the loss and conversion within a few days after it occurred. The bill of lading, which contained the shipping contract between the parties, expressly provided, as we have seen, that a claim for loss or damage must be made in writing within four months after the delivery of the property, or in case of no delivery within four months after reasonable time for delivery has elapsed, and that unless a claim is so made the carrier should not be liable. Plaintiff made the shipment under the stipulation, and if it is valid and not unreasonable it must be given effect. It was held in *Watt v. Railway Co.*, 90 Kan. 466, 135 Pac. 600, that a contract limiting the time in which an action might be commenced for losses in transportation to ninety days, was not unreasonable. In *Ray v. Railroad Co.*, 96 Kan. 8, 149 Pac. 397, a stipulation in a shipping contract limiting the bringing of an action by a shipper for loss to ninety-one days, was held not to be invalid or unreasonable. (See, also, *Enright v. Railway Co.*, 96 Kan. 546, 152 Pac. 629; *Abell v. Railway Co.*, 100 Kan. 238, 164 Pac. 269; *Easdale v. Railway Co.*, 100 Kan. 305, 164 Pac. 164; *Wallingford v. Railway Co.*, 101 Kan. 544, 167 Pac. 1136; *Salmans v. Railway Co.*, 111 Kan. 297, 206 Pac. 1111; *Grain Co. v. Railway Co.*, 115 Kan. 188, 221 Pac. 1117.) These rulings were made in cases of interstate shipments, but the stipulation contained in the bill of lading is of the standard form which is used in intrastate as well as interstate transportation, and no reason is seen why the stipulation should be less binding in one than in the other. The reasons for the making and enforcement of such contracts is well stated in *Georgia, Fla. & Ala. Ry. v. Blish Co.*, 241 U. S. 190. In that case there was a delivery of property by the railway company without the surrender of a bill of lading, and the shipper sued alleging a conversion of the property. The railway company defended on the ground that no

Farmers Grain Co. v. Atchison, T. & S. F. Rly. Co.

claim in writing had been made for the loss within four months after delivery as required by a stipulation in the contract. Among other things the court remarked:

"When the goods have been misdelivered there is as clearly a 'failure to make delivery' as when the goods have been lost or destroyed; and it is quite as competent in the one case as in the other for the parties to agree upon reasonable notice of the claim as a condition of liability. It may be urged that the carrier is bound to know whether it has delivered to the right person or according to instructions. This argument, however, even with respect to the particular carrier which makes a misdelivery, loses sight of the practical object in view. In fact, the transactions of a railroad company are multitudinous and are carried on through numerous employees of various grades. Ordinarily the managing officers, and those responsible for the settlement and contest of claims, would be without actual knowledge of the facts of a particular transaction. The purpose of the stipulation is not to escape liability but to facilitate prompt investigation. And, to this end, it is a precaution of obvious wisdom, and in no respect repugnant to public policy, that the carrier by its contracts should require reasonable notice of all claims against it even with respect to its own operations. . . . In this view, it necessarily follows that the effect of the stipulation could not be escaped by the mere form of the action. The action is in trover, but as the state court said, 'if we look beyond its technical denominations, the scope and effect of the action is nothing more than that of an action for damages against the delivering carrier.' (15 Ga. App., p. 147.) It is urged, however, that the carrier in making the misdelivery converted the flour and thus abandoned the contract. But the parties could not waive the terms of the contract under which the shipment was made pursuant to the federal act; nor could the carrier by its conduct give the shipper the right to ignore these terms which were applicable to that conduct and hold the carrier to a different responsibility from that fixed by the agreement made under the published tariffs and regulations. A different view would antagonize the plain policy of the act and open the door to the very abuses at which the act was aimed." (pp. 195, 197. See, also, *Davis, Director General, v. John L. Roper Lumber Co.,* 46 Sup. Ct. Rep., 28.)

The great number and variety of transactions on a railway in even a single day where property is handled by a multitude of employees, at different points along the railroad, and the difficulty of making inquiry as to each transaction, afford good grounds for a stipulation that a claim of loss or damage should be brought to the attention of the managing officers of the carrier within a reasonable time. The plaintiff agreed that if there was loss or damage in the shipment he would present a written claim within the time specified, and that if he did not do so no liability should attach to the carrier for the loss or damage. There is no claim of fraud in the execution of the contract nor that plaintiff was unaware of the stipulation in it when it was executed. The fact that some agent

or some employee of the railway may have known the circumstances of the wrongful delivery does not militate against the validity and binding force of the stipulation. In nearly every case a loss or injury is known to some agent or employee of the carrier, but such knowledge does not overcome the purpose of the stipulation nor meet the necessity of a reasonably prompt presentation of a claim for loss to the managing agents of the company. Another consideration is that the railway company must deal with all shippers alike respecting such contracts. Our statute condemns privileges, favors and discriminations among shippers and patrons of a railway company as sternly as do the federal statutes, and if the company required one shipper to observe the requirement as to a claim of damage and waived it in cases of other shippers, it would be subject to the condemnation of the law. Rates, rules and regulations, including forms and stipulations in bills of lading, are now filed with the public service commission and these cannot be changed without the approval of that tribunal. They have the force of law, and shippers as well as carriers are deemed to have knowledge of them, to contract with reference to them, and to be bound by them. To ignore or waive a lading stipulation in one case and enforce it in another would be an illegal discrimination. (*Mollohan v. Railway Co.*, 97 Kan. 51, 154 Pac. 248; *Kennedy v. Railway Co.*, 104 Kan. 129, 179 Pac. 314; *Grain Co. v. Railway Co.*, supra; *Phillips v. Grand Trunk Ry.*, 236 U. S. 662.) Some cases are cited by plaintiff in which exceptions were made in favor of the shipper under certain contracts because of the actual knowledge of the carrier of the injury or loss, but as said in *Kennedy v. Railway Co.*, supra, the public control of carriers, the uniformity and equality required by law and regulations and the prohibition of preferences or discriminations, takes from the force of some of the earlier rulings.

In view of the authorities cited we must hold that the stipulation is reasonable and valid, that the knowledge of some agent or employee of the railway company does not excuse compliance with the stipulation, and that the shipper cannot escape the effect of the stipulation by the fact that the grain was misappropriated and that the action is one for conversion.

The judgment must be reversed so far as it affects the railway company, but as to the other defendants it is affirmed.