## No. 32,577

H. H. Taylor, *Appellee* and *Cross Appellant,* v. The Missouri Central Type Foundry Company and R. J. Studebaker, *Appellants.*

(53 P. 2d 815)

Opinion filed January 25, 1936.

*Paul W. Schmidt, Robert C. Foulston, George Siefkin, Sidney L. Foulston, Lester L. Morris, George B. Powers, Carl T. Smith* and *C. H. Morris,* all of Wichita, for the appellants.

*C. L. Kagey, Hal M. Black, L. M. Kagey,* all of Wichita, *H. L. Smith* and *H. R. Duncan,* both of Tulsa, Okla., for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This was an action to recover damages for conversion of certain printing machinery.

The petition alleges that plaintiff, H. H. Taylor, on and prior to the 17th of November, 1932, was the owner and in possession of such machinery, that it was situated in a building occupied by the Taylor and Skinner Publishing Company, a corporation, in Cushing, Okla., that on or prior to November 17, 1932, the defendants, a corporation and an individual of Wichita, Kan., entered upon said premises and removed said machinery from the possession of the plaintiff and have converted and disposed of the same to the damage of the plaintiff in the sum of $10,000.

The answer of both defendants is a general denial and a special denial in substance and effect, that on and prior to September 10, 1932, the said machinery belonged not to the plaintiff, but to the Taylor and Skinner Publishing Company, which company had possession thereof in its printing plant in Cushing, Okla., that the plaintiff was the president and general manager of said company, that on September 16, 1932, the company went into the hands of a receiver, one W. P. Ballew being appointed as such, that said receiver took possession of all the printing machinery in the plant, including that described in the petition, and remained continuously in possession thereof until October 27, 1932, when he, by order of the court, delivered possession thereof to the defendants with a bill of sale for the consideration of $9,000 paid to said receiver, that the plaintiff failed and neglected to file any pleadings in the receivership case, but he had full knowledge of all the proceedings therein and acquiesced therein and consented thereto and that the defendant company has, since October 27, 1932, claimed and exercised exclusive right of title, ownership and possession of said personal property adversely to all parties, and that the claim or right of the plaintiff in and to said property or any cause arising therefrom has become null and void and barred by the laches of plaintiff and by the statute of limitations. A reply in the form of a general denial was filed.

The case was tried by a jury. At the close of the plaintiff's testimony the defendants demurred thereto, which demurrer was overruled. After the introduction of evidence by the defendants the

court sustained the motion of the plaintiff for an instructed verdict in favor of the plaintiff and against the defendants for conversion, but submitted to the jury the question of the market value of the property converted, and the jury returned a verdict for $7,950. The motion of the defendants for a new trial and motions of the plaintiff for interest on the amount of the verdict were overruled.

The defendants appeal, alleging error in overruling their demurrer to the plaintiff's evidence because of the action for conversion being barred by the two-year statute of limitations, and also error in directing the verdict because the case involved questions of fact for the triers thereof, also the question of estoppel, and receiving and retaining the proceeds of the sale of the property in question.

The plaintiff has a cross-appeal on the ground of the court's refusal to allow interest on the verdict either from the date of the conversion or from the date of the verdict of the jury, but allowed interest only from the date of the judgment.

The following are dates and other undisputed facts that are of special importance in the consideration of the legal questions here submitted: In the spring of 1932 the plaintiff and J. M. Skinner organized the Taylor & Skinner Publishing Company at Cushing, Okla., Taylor having fifty percent of the stock, his wife one percent and Skinner forty-nine percent, and these three were the directors. The printing machinery involved in this action was moved to Cushing with other printing equipment that went into the new corporation and was stored in the Cushing printing plant. On July 28, 1932, Skinner sold his interest in the company to the plaintiff Taylor and took a chattel mortgage from Taylor on the particular machinery here involved for $3,800, and placed the mortgage of record, as shown by one of the exhibits. Plaintiff was ill and visited the plant only two or three times before it was sold by the receiver. He was consulted about the appointment of a receiver and had some communication with the receiver after his appointment, and also some conversation with Mr. York, an officer of the company.

The receiver was appointed on September 16, 1932, and filed an inventory on September 23, 1932, of all the property, including this machinery claimed by the plaintiff personally. On October 14, 1932, the receiver sold all the property, including the items here involved, to the defendants and gave a bill of sale which was approved by the court on October 21, 1932. The defendants removed the prop-

erty from the printing plant in Cushing to Wichita on November 17, 1932. The receiver was told by Skinner three or four days after his appointment that certain machinery in the building belonged to the plaintiff personally and not to the corporation, describing it in particular, and told him of it many times during his receivership.

This action was commenced in the district court of Sedgwick county on October 12, 1934, or lacking two days of being two years after the sale of the property by the receiver to the defendants, so the statute of limitations had not run by two days as applied to the conversion or adverse possession of the defendants. The appellants, however, maintain that the receiver was a trespasser, as far as this machinery of plaintiff was concerned, from September 23, 1932, and plaintiff could from that date have maintained an action against him for damages or to recover possession of this property detained by him. That such possession by him was adverse to the plaintiff and that it was open, notorious and exclusive under a claim of right, and that "tacking" applies to personal property as well as to real estate, and so, adding or tacking this adverse possession of the receiver to that of the defendants, the total time of adverse possession exceeds the statutory limit of two years, and the action was barred by the statute of limitations, and the demurrer of the defendants to the evidence of the plaintiff should on that account have been sustained.

The finding of the trial court in favor of the plaintiff on issues of the pleadings is a finding of conversion by the defendants which includes adverse possession after they admit it was taken by them. This might be either October 14 when they purchased it or November 17 when they removed it from the building, although there was evidence by the plaintiff of their having taken some of the property out of the building long before November 17.

The acts and conduct of the receiver prior to the sale and delivery of the goods to the defendants were unquestionably adverse to the personal interests of the plaintiff with reference to this particular machinery, especially when informed as he was by the others of the ownership of the plaintiff as recounted above.

In 26 R. C. L. 1113 it is said:

"Any distinct act of dominion wrongfully exerted over the property of another, in denial of his right, or inconsistent therewith, may be treated as a conversion, and it is not necessary that the wrongdoer apply the property to his own use. Thus, taking or retaining possession of personal property under a wrongful assertion of ownership may amount to a conversion. The unlawful

taking of goods out of the possession of the owner with intent to convert them to the use of the taker is clearly a conversion, though an actual, forcible dispossession or manual taking need not be shown, any intermeddling or exercise of dominion over the property of another in denial of such owner's rights being sufficient to constitute conversion."

The liability of a receiver in exceeding his authority is in his individual capacity and not in his official capacity. (*Johnson v. Farm & Home Savings & Loan Ass'n,* 131 Kan. 238, 289 Pac. 396.)

In the case at bar the receiver was only appointed as such to handle and dispose of the corporate property, yet he pretended to act as the receiver in including the personal property of the plaintiff in his official inventory and retaining an exclusive possession of it and later selling and delivering it to the defendants, after often being told that such property did not belong to the corporation. Undoubtedly an action of the same kind as this, viz., of conversion, could have been brought against W. P. Ballew, while acting as receiver, to recover from him personally the specific property, or damages if he had converted or disposed of it.

Several authorities are cited to show that a receiver is only a ministerial agent of the court, and that he can acquire no other or greater interest than the debtor, and that where several contribute to the transfer of the property they are all joint tort-feasors and all are liable. But these and similar authorities will not relieve the good-faith purchaser nor his vendor if they persist in holding possession of the property as against or inconsistent with the rights of the real owner.

There seems to be no question that if the statute of limitations is a bar to this action it is the third subdivision of R. S. 60-306, or the two-year limit. This is from every aspect an action in conversion or in tort, and is necessarily limited by the two-year provision. (*Jameson v. Beeler & Campbell Supply Co.,* 118 Kan. 760, 236 Pac. 647, and *Carter v. Pratt,* 23 Kan. 613.)

There is no question in this state about tacking the periods of adverse possession of real property to complete the bar of the fifteen-year statute of limitation where there exists a relationship and unbroken continuity of such adverse possession. (*Yeamans v. James,* 27 Kan. 195; *Hughes v. Ridgeway,* 86 Kan. 852, 122 Pac. 871; and *Manufacturing Co. v. Crawford,* 84 Kan. 203, 114 Pac. 240.) In the case last cited above it was said in the opinion:

"In order that the several possessions can be regarded as continuous and referred to the original entry, there must be privity of estate or title. This

privity of estate may be shown by deed or by parol. The rule is thus stated in 1 A. & E. Encycl. of L. 844:

"'The privity required to constitute continuous adverse possession may be effected by any conveyance, agreement, or understanding which has for its object a transfer of the rights of the original entry.'" (p. 206.)

Under the heading of Adverse Possession in 2 C. J. 285 it is said:

"The law relating to adverse possession of chattels, while differing in some respects from that which relates to adverse possession of lands, bears a close analogy thereto. Under the statutes governing the subject title to chattels may be lost or acquired by adverse possession."

On page 287 of the same volume it is said:

"As is the case of adverse possession of realty, adverse possession of chattels for the statutory period operates not merely to bar the remedy but vests absolute title in the possessor, which is equally available for attack or defense. The adoption of a contrary doctrine, it has been said, would result in dangerous consequences to society and in violence and the prostration of good order."

In 65 C. J. 11 "conversion" is defined as follows:

"Conversion is 'an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights.'"

In 2 C. J. 82 the doctrine of "tacking," as applied to real property, is described as follows:

"It does not follow from anything heretofore said that continuous possession in any one person is necessary for the acquisition of title by adverse possession. On the contrary it is a rule of almost universal application that, if there is privity between successive occupants holding adversely to the true title continuously, the successive periods of occupation may be united or tacked to each other to make up the time of adverse holding prescribed by the statute as against such title."

In the consideration of the demurrer to plaintiff's evidence and the question of tacking different periods of adverse possession, we are accepting completely the theory of the plaintiff as to the acts of the defendants constituting adverse possession and conversion as held by the trial court.

The case of *Farmers Grain Co. v. Atchison, T. & S. F. Rly. Co.*, 120 Kan. 21, 245 Pac. 734, and the same case on rehearing, reported in 121 Kan. 10, 245 Pac. 734, cited by the appellee, supports strongly his theory as to the defendant being liable for conversion, and for the purpose of the demurrer we must so consider them, and that case includes all who contribute to the transfer or disposition as liable in conversion whether they are jointly or severally sued.

We thoroughly agree with plaintiff that he is not required to complain of any acts of the receiver committed prior to October 14, 1932, but if the evidence shows such acts to be inconsistent with the rights of the plaintiff and adverse thereto in the exercise of his possession of the plaintiff's individual property, the failure of the plaintiff to allege such conduct will not prevent a conclusion that his possession was adverse to the plaintiff. Plaintiff insists that the possession of the receiver cannot meet the necessary requirements of being adverse, as outlined in 2 C. J. 285, especially the requirements of being "continuous and uninterrupted." No statement or fact is called to our attention which interrupted or broke the continuity of the receiver's possession of all the property in the building until he sold it, nor to any statement or fact that separated or broke the continuity between the receiver's possession and that of the defendants.

Appellee cites 2 Wood on Limitations (4th ed.), 859, which, after discussing this subject at some length, states:

"But, in order to defeat the title of the true owner to the property, the possession must be adverse, the same rule obtaining in this respect as obtains relative to lands; but the possession must be continuous in the person seeking to avail himself thereof, and he cannot tack it to the possession of another, and thus acquire title under the statute."

In Angell on Limitations (6th ed.), 324, it is said:

"But where goods are tortiously taken, the statute will run from the taking, for that, in such a case, is the time of the conversion. Thus, where goods were taken on an execution, which was afterwards set aside for irregularity, an action of trover was brought, and the defendant pleaded the statute of limitations; it was held, that the execution being irregular, was a nullity, and that the time when the statute began to operate was from the first taking of the goods, and not from the time when the execution was set aside. So an unlawful disposition of property, rightfully in possession, being a conversion, the statute will run from such unlawful act. And the statute is also a bar to an action of trover commenced more than six years after the conversion, although the plaintiff did not know of the conversion, until within that period."

In Buswell on Limitations and Adverse Possession it is said on page 305:

". . . in an action of trover, the possession of one who claimed adversely to the true owner and sold to the defendant, cannot be tacked to the possession of the defendant so as to make up the time of the statutory limitations."

This seems to be based on trover or the finding of goods of another, as it is said on page 302:

"For any man may take the goods of another into possession if he find them; but no finder may acquire a property in them, unless the owner be forever unknown."

And on page 303 the distinction is made as to the unlawful taking of the goods of another in the following language:

". . . where goods are tortiously taken, the statute will run from the taking, for that, in such a case, is the time of the conversion, and the conversion, and not a subsequent tortious sale of the goods, is the time from which the limitation begins to run."

Even if it should be argued that the holding by the receiver was official or judicial, there is, notwithstanding, an adequate remedy during that time, as it was held in the two cases, *Fleeger v. Swift* and *Fleeger v. Inge*, 122 Kan. 6, 251 Pac. 187:

"The possession of property by a receiver duly appointed by a court of competent jurisdiction is to be regarded as the possession of the court, a possession which is exclusive in character, and the property so held is not subject to seizure by attachment issued from another court.

"A creditor claiming a lien or preference as to the property is not without remedy, as the court having the custody and control of the property has jurisdiction to give all necessary and proper relief upon application of any party claiming any interest in it." (Syl. ¶¶ 1, 2.)

In the Restatement, Torts, section 222 is as follows:

"One who intentionally dispossesses another of a chattel without his consent or other privilege to do so is liable to the other either as a trespasser for the damage done or as a converter for the value of the chattel except as stated in §§ 247 and 249."

Section 247 deals with mitigation of damages by an offer to return the chattel, and section 249 deals with circumstances which bar a recovery, as ratification, settlement, release or satisfaction.

In Ames Lectures on Legal History it is said:

"The bar of the statute operating as a perpetual injunction against the enforcement of the right of action virtually destroys that right; and the policy of the law will not permit the dispossessed owner's right to recover by his own act to survive the extinguishment of his right to recover by legal process. . . .

"The decisions in the case of chattels are few. As a matter of principle, it is submitted this rule of tacking is as applicable to chattels as to land. A denial of the right to tack would, furthermore, lead to this result. If a converter were to sell the chattel, five years after its conversion, to one ignorant of the seller's tort, the dispossessed owner's right to recover the chattel from the purchaser would continue five years longer than his right to recover from the converter would have lasted, if there had been no sale. In other words, an innocent purchaser from a wrongdoer would be in a worse position than the wrongdoer himself—a conclusion as shocking in point of justice as it would be anomalous in law. . . .

"This tacking is allowed in England, Canada, and in several of our states. There are, however, some decisions and a widespread opinion to the contrary in this country. . . . The laches of the original owner, who remains continuously dispossessed throughout the statutory period, is the same, and should be attended with the same consequences to him, whether the adverse possession be held continuously by one or several persons . . ." (pp. 201, 204-206.)

As stated in the above authorities, decisions are found on both sides of this proposition of tacking under open, public and notorious adverse possession of personal property, and such different holdings are cited in the notes to the texts above quoted. The only comment on the different conclusions reached in these many decisions that may be appropriate here is the fact that most of those cited as opposed to tacking are very much earlier than those in favor of tacking, which is in harmony with the history of the same subject in England, where tacking of two or more adverse possessions of personal property was not recognized until comparatively recently. Another distinction is worthy of notice, that the statutes of some states deal only with the remedy for recovery of the property and make no provision as to the title or legal ownership thereof by reason of delayed action.

We feel satisfied and justified in following most of the texts above quoted and joining those courts which hold tacking is proper in effecting a bar under the statute where there is a privity between the parties that have exercised continuous and uninterrupted adverse possession of personal property. And since such adverse possession was shown by the evidence of the plaintiff and the exhibits to have exceeded the limit of two years before bringing this action, the demurrer of the defendants to the evidence of the plaintiff should have been sustained. This holding makes it unnecessary to consider the other points raised in this appeal or in the cross-appeal.

The judgment is reversed, and the cause is remanded with instructions to sustain the demurrer to plaintiff's evidence.